## WOLCOTT v. TIMBERMAN.

1. **Assignment: WITHOUT RECOURSE : FAILURE OF TITLE.** While the words "without recourse," as used in the indorsement of commercial paper, will operate to limit the liability of the indorser, as such,

only, and will not relieve him from liability in case he was not the lawful holder of, or had no title to, the note, yet they will have a different effect when used in connection with the sale and assignment of certain securities and choses in action, and if it turn out that the vendor or assignor had in fact no title to one of the choses assigned, though both parties supposed he had, he cannot, in view of these words used in the assignment, be held liable. The words " without recourse," in such case, will be so construed as to operate to relieve the assignor from liability as a vendor.

2. —— APPLICATION OF THE RULE. W. and T. being sureties for L. in a certain judgment, received from him an assignment (as collateral security) of certain claims and choses in action, among which was mentioned a promissory note upon a third party, which was described as being lost or mislaid. Subsequently L. assigned, absolutely, all his interest in the claims specified to the sureties, W. and T. Subsequently to this, W. assumed to pay, and afterward did pay, the judgment, in consideration of T. assigning to him all his interest in said claims "without recourse," and paying to him $300 additional. It was afterward ascertained that the note described as being mislaid, and which was the most valuable of the claims, had in fact been before assigned by the debtor to, and was held by, a third party, and that the rest of the claims were nearly worthless. *Held*, no fraud being shown, that the words " without recourse " in the assignment protected the assignor from liability for failure of title in the note.

*Appeal from General Term, First District (Lee County).*

THURSDAY, APRIL 7.

THIS is an equitable proceeding. The District Court, upon a trial on the merits, dismissed plaintiff's petition, and the General Term reversed that decision. Defendant appeals to this court.

*McCrary, Miller & McCrary* for the appellant.

*R. P. Lowe* and *Gibson Brown* for the appellee.

BECK, J.—The plaintiff and defendant, with others, were securities of one Lynch upon a promissory note, on which judgment was rendered against them. The other

sureties were insolvent. In order to secure the plaintiff and defendant, on account of their liability on the judgment, Lynch delivered to them certain notes or claims against others, and transferred certain shares in two railroad corporations. They executed to Lynch a receipt for the claims and railroad stock, undertaking thereby to collect and convert the same into money, and apply the proceeds in payment of the judgment, and to return the balance, if any, to Lynch. The receipt is dated August 13th, 1858. Subsequently, by writing indorsed upon this instrument, Lynch assigned all his interest to the property specified therein to plaintiff and defendant. On the 15th of September, 1858, by a like indorsement, Timberman assigned all his interest therein "without recourse" to Wolcott. This last assignment was made under an arrangement between the parties, by which Wolcott undertook and assumed to pay the judgment in consideration of the transfer of the *choses* in action and railroad shares received from Lynch, and the further sum of $300, to be paid by Timberman, and for which he executed his note payable at a future day. This note was paid at or shortly after maturity.

Upon or prior to the payment of this note by Timberman, Wolcott executed to him his bond, obligating himself to pay and discharge the judgment, and to hold Timberman harmless thereon. The consideration expressed in this bond for Wolcott's undertaking is the note executed by Timberman and the assignment of his interest in the property received of Lynch. The bond is dated February 3d, 1859.

Among the claims received by the parties from Lynch and assigned by Timberman to Wolcott, was a mortgage, executed by W. W. Belknap, securing a note for $666. The note, in the receipt executed by the parties to Lynch, is described as being lost or mislaid, and it was not, therefore, delivered to them, and, in fact, never came into

their hands. It was supposed by the parties at the time, and when the subsequent arrangements were entered into between them, that the title to the note really passed to them from Lynch. It appears, however, that the note had been, before this, transferred by Lynch, and was in good faith held by other parties. No attempt was made by Wolcott to collect the note and mortgage executed by Belknap. The other notes and property received from Lynch proved worthless, or nearly so, thirty dollars being the whole amount realized from them. The judgment was satisfied by a sale of Wolcott's property. Upon this state of facts, disclosed by the evidence and sufficiently set out in the petition, plaintiff seeks to recover.

He claims that the agreement between himself and Timberman, whereby he assumed to pay the judgment, was made under a mutual mistake of fact, in that they both supposed a good title was acquired by them to the Belknap note, and wholly vested in plaintiff by the assignment of defendant. He insists that the agreement, for this reason, is voidable, and that he can have relief in equity. He claims that the agreement should be set aside, and Timberman be required to pay one-half the judgment, less the $300 paid to plaintiff, with interest. It is admitted that the $30 realized from the property received of Lynch should be deducted from the judgment in making this estimate. Estimating the amount in this way he claims he should recover $905.70.

It is insisted, that, in case the agreement cannot be wholly set aside, it should be corrected as to the Belknap note, and defendant be required to pay to plaintiff one-half the amount of that note, with interest.

In our view, the transactions between the parties clearly amount to a contract, whereby plaintiff undertook to pay the judgment and release defendant from any loss or liability on account thereof. In consideration of his under-

taking, he received $300, besides the interest of defendant in the notes and property received from Lynch, the nominal amount of which considerably exceeded the amount of the judgment. This contract is in terms expressed in plaintiff's bond executed to defendant. It is not pretended that defendant, by any concealment or fraud, took advantage of plaintiff in the transaction, or that the bond was unfairly procured by defendant. As plaintiff presents the case, both parties were at the time ignorant as to the true ownership of the Belknap note, and the value of the other property received from Lynch. It was clearly the intention of the parties, that defendant should not be liable for any loss upon or deficiencies in the property he assigned plaintiff, for the assignment is made, in terms, "without recourse." The contract is supported by a sufficient consideration, even should it be admitted that the property received from Lynch was worthless, for it is admitted that the $300 were paid by defendant to plaintiff. The law will, in this as in other cases, refuse to inquire into the adequacy of the consideration, when satisfied that it is in fact sufficient to support the contract. Plaintiff received the $300 and the assignment of defendant's interest in the property transferred by Lynch, and in consideration thereof obligated himself to release defendant from payment of the judgment. No concealment or fraud was practiced upon him. Defendant did not guarantee either the title or value of the property he assigned, but, on the contrary, the assignment, by its very language, expressly relieves him from liability thereon. The assignment by defendant to plaintiff of his interest in the property received of Lynch was in writing, indorsed upon the written assignment made by Lynch, and, as before stated, expresses that it was made "without recourse." These words, as used in the indorsement of commercial paper, probably would not relieve the indorser from lia-

Wolcott v. Timberman.

bility, in case he was not the lawful holder of the note, or, in other words, had no title thereto. They would operate to limit his liability as indorser only. They have a different effect as used in the assignment made by defendant. By the transfer of the property, in the manner chosen, he did not become liable as an indorser of the Belknap note. His liability, at most, was that of a vendor. Without qualification in the assignment he may have been liable, in case of the failure of the title to the note, but for nothing else, in the absence of fraud or concealment. The words " without recourse " were evidently intended to qualify defendant's liability. They cannot operate unless they relieve him of liability as a vendor, for he is liable only as such. Neither can they operate, unless they relieve him of liability in case of the failure of the title to the note, for he is liable under no other circumstances.

In this view of the case, the contract between the parties cannot be wholly set aside; neither can it be reformed or partially annulled, so far as to permit plaintiff to recover one-half of the amount of the Belknap note. Plaintiff cannot recover of defendant as the vendor of that note, for, as we have seen, he is protected by the terms of the assignment — the sale of the property.

Other questions, raised by the appellant as to the laches of plaintiff, limitation of action under the statute, etc., need not be considered, as the foregoing conclusions are decisive of the case.

The judgment of the General Term, reversing the decision of the District Court, is

Reversed.