SCOFIELD v. MOORE *et ux.*

1. Assignment: OF JUDGMENT WITHOUT RECOURSE. The assignor of a judgment, a part of which has been paid, but of which fact he has no knowledge at the time of his sale and assignment, is not liable to the assignee or person purchasing the judgment, for the amount so paid, when the assignment or transfer is only of his right, title and interest in the judgment, and that without recourse.

2. —— RULE APPLIED. Judgment, a part of which had been paid and no record of such payment made, assigned in the following form: "For value received we hereby sell and assign all our right, title and interest in this judgment to M. without recourse on us." *Held*, no fraud being shown, that the assignors were not liable to the assignee for the amount which had been paid on the judgment.

*Appeal from General Term, Sixth District (Washington County).*

THURSDAY, APRIL 6.

ACTION to foreclose mortgage. Trial to the court who found the following facts: 1st. That, April 29, 1857, George Brokaw obtained a judgment in this court against Charles Foster for $119.77 debt, to draw interest at ten per cent, and $5.05 costs. 2d. That, about January 1, 1858, the said Foster delivered to the said Brokaw a car load of coal in part payment of said judgment, but no credit was ever entered upon the record thereof, and the judgment appeared wholly unsatisfied. The parties had never agreed upon the value of the coal, but it was of the value of $75. 3d. That, February 22, 1867, said Brokaw sold and assigned said judgment without recourse to said firm of Scofield & Sherman. 4th. That said judgment was a lien upon certain real estate claimed by the defendant, T. P. Moore, and to secure said lien he purchased and procured the assignment of the judgment to himself,

and the note and mortgage upon which this suit was brought, being for $240, dated April 10, 1867, was given in consideration thereof. 5th. That said assignment by Scofield & Sherman to defendant bears date April 15, 1867, and is for all their right, title and interest in the judgment without recourse; neither party at the time knew of the payment that had been made thereon. 6th. That, on April 11, 1867, the defendant, T. P. Moore, had execution issued on said judgment for the whole amount, and May 23 out-lot No. 6, in the south-west Washington, was sold thereon to said defendant for $240, as the property of Charles Foster. 7th. That, on May 4, 1868, a decree of this court was entered in the case of *Temperance Van Doren v. Ella H. Foster, T. P. Moore et al.*, setting aside said sale, foreclosing a mortgage on said lot, and ordering a sale thereof on special execution; a sale was made thereunder and a sheriff's deed executed, conveying said lot to Temperance Van Doren, the purchaser thereof, June 20, 1868. 8th. That defendant has never realized any thing on said judgment. 9th. That said Charles Foster has been insolvent since 1859; is now deceased and his estate insolvent. 10th. That the amount actually due on said judgment of debt, interest and costs at the time of the transfer to defendant was $112.05. 11th. That the plaintiff, H. Scofield, is the surviving partner of the firm of Scofield & Sherman. Upon these *facts* the court based the following conclusions of law, to wit:

I. That there was a want of consideration for the said note to the extent of $127.95, and the same is void *pro tanto*.

And thereupon the court rendered judgment in favor of the plaintiff against T. P. Moore, for the sum of $140.37 only, and costs of suits, and a decree foreclosing said mortgage to satisfy the same. The plaintiff excepted, claiming a judgment for the whole amount of the note sued on, together with interest and costs. On appeal to the general

term, the judgment of the district court was affirmed. The plaintiff now appeals to this court.

*H. & W. Scofield* for the appellant.

*Bennett & Wheeler* for the appellees.

COLE, Ch. J.— The only real point of controversy in this case is, whether the transferrer of a judgment, a part of which has been paid, but of which fact he has no knowledge, is liable to the transferee for the amount so paid, when he transfers only his right, title and interest in the judgment, and that without recourse.

The particular form of the transfer or assignment in this case is peculiar, and we ground our conclusion upon its peculiar phraseology. Its substance is well set forth in the findings of fact by the court, and in full, it is as follows: "For value received, we hereby sell and assign all our right, title and interest in this judgment, to Thomas P. Moore, without recourse on us." Ordinarily, the words "without recourse" have only the effect to exempt the transferrer from liability by reason of the insolvency of the obligors. Such a transferrer guarantees the genuineness of the instrument transferred, and its vitality as a binding obligation. But it is clear that a transferrer may, if he can find another who will so contract with him, stipulate for his exemption from liability by reason of the fictitious character of the instrument, or its nullity as an obligation. The real question then is, what is the true construction — the legal effect of the language of this transfer or assignment?

The transferrers do not assert any positive ownership of the judgment, nor that it has any present obligatory force. In effect they say to the assignee "there is a judgment upon the records of the court and it has been assigned to us upon the record also, by the judgment plaintiff; we

have no knowledge other than is disclosed by the record; we do not propose to sell you *the judgment,* we only offer to transfer to you *all our right, title and interest in it,* whatever that may be." Now, without the use of negative words, it is difficult, if not impossible, to find language more potent or effective in excluding all idea of personal liability in any event than the language of this transfer, and in analogy to the adjudicated legal effect of the language of this transfer when used in conveyances of real estate, and followed by express covenants having reference thereto, we are led to hold that these transferrers were not guarantors of the amount due upon the judgment. See *McNear* v. *McComber,* 18 Iowa, 12; *Street* v. *Rider,* 14 id. 506; *Davis* v. *Murphy,* 14 Ind. 158; *Watson* v. *Chesire,* 18 Iowa, 202, and cases there cited; *Wolcott* v. *Timberman,* 28 Iowa, 454.

Of course, if the transferrer makes any false or deceitful representations, or even conceals his knowledge of defects or infirmities in the instrument transferred, such representations or fraudulent concealments will make the transferrer liable. In this case there is no finding of fact nor any claim even that the transferrers either made any representations or had any knowledge in relation to the part payment of the judgment transferred, or of any other defect in it. They simply transferred their interest and the defendant must be held to have taken the same under the common-law rule *caveat emptor.*

Inasmuch as the judgment plaintiff, who received the part payment on the judgment prior to his assignment of it, might be liable, under the rule herein held, to his immediate transferees; and since his liability over to this defendant, the transferee of his transferees, may be mooted, as it is discussed in *Watson* v. *Chesire, supra,* we simply desire to say that, notwithstanding the discussion contained in the opinion in that case, we regard it as still an open question. The judgment in the district court should have been for the

Scofield v. Moore.

full amount of the note and interest, and for the foreclosure. For this error it is

Reversed.

#### OPINION ON REHEARING.

BECK, J. — A rehearing was ordered in this case, upon the petition of defendants, and thereupon the cause was again fully and ably argued by the counsel of the parties. Upon a careful reconsideration of the case we are constrained to adhere to the conclusions announced in the foregoing opinion. The earnestness and ability displayed by defendants' counsel upon the re-argument demand that the points made by them be, at least, briefly noticed. We will, however, first add a few thoughts, in addition to the arguments of our former opinion, which, we believe, support its conclusions. These conclusions are based upon the peculiar language of the assignment. The assignors transferred their "right, title and interest" in the judgment "without recourse." The words used clearly indicate the absence of any intention to warrant the validity or value of the judgment or that it was collectible. The word "title" relates to the assignors' *ownership* of the judgment — that is, by the use of the word they indicate the intention to transfer whatever property they may hold in it. The words "right and interest" relate to the extent of that ownership or property. By the use of these words the assignors undertook to transfer whatever of value they owned or held in the judgment. The thing transferred was the *debt*, the chose in action, represented by the judgment. The words used in the assignment clearly indicate that the assignors shall not be liable for any failure of title to or diminution of interest in the *debt*. The use of the words "without recourse" gives additional force to this view. The phrase must be understood in connection with the other language of the assignment and as having been used in reference to it. The fair meaning of the assignment

Scofield v. Moore.

is, that the assignees shall not have recourse upon the assignors on account of any failure of title or diminution of interest in the judgment.

Defendants' counsel urge that, because the note and mortgage, the foundation of this suit, was given for the judgment, which could not have been enforced to the full extent of the amount as shown by its face, therefore they cannot be enforced for an amount greater than actually remained unpaid on the judgment. But this argument leaves out of view the fact that the note and mortgage are new contracts, founded upon the transfer of the judgment, which is a sufficient consideration to support them.

Counsel for defendants enter into an extensive examination of the authorities to determine the effect of an assignment of a judgment, and conclude that, though it be made without recourse, yet the assignor is held to warrant that it has not been paid. This may be admitted, and yet the conclusion of the counsel in this case would by no means follow. The qualifying words used in the assignment, namely, "all my right, title and interest," as we have above pointed out, express a different contract. These words relate to the thing assigned and express a contract to the effect that whatever property, right or interest the assignors held in the judgment was transferred, and no more. As the extent of that property or interest is not determined by the assignment, but left indefinite and uncertain, there could exist no warranty relating thereto.

It is further claimed, that as there was a mutual mistake as to the extent of the thing sold — the judgment — equity will relieve the party injured thereby. But how can we say there was a mistake as to the extent of the thing sold, when by the very terms of the assignment it is left uncertain and undetermined? The language of the contract of the assignment plainly indicates that the value of the judgment was not understood as being within the stipulations of the contract. There could have been no mistake as to

the extent of the thing sold, for it must be admitted that the assignee takes by the assignment precisely what is therein transferred, namely, all the assignors' "right, title and interest" in and to the judgment. But it is claimed that both the parties supposed that no payment had been made on the judgment. Let this be admitted. Why were the limiting words used if the assignors intended to warrant that the whole amount of the judgment was unpaid? We must give these words their proper force, and are therefore constrained to conclude that the assignor intended to protect himself from just such a contingency as the part payment of the judgment without his knowledge.

The facts of the case, independent of the terms of the assignment, support our conclusions. That the judgment was a valid lien upon property of sufficient value to secure its collection was a fact well known to both parties. Indeed, for that reason was it purchased by defendant. The only question as to the judgment that could have arisen in the minds of the parties must have related to the assignors' title, property or interest therein. To these, therefore, were the words of limitation in the assignment intended to apply. Neither party could have had a motive to intend the application to the collectible character of the judgment to its full extent.

Adhering to our former opinion, we adjudge that the decision of the district court be

Reversed.