Miller v. Dugan.

MILLER *et al.* v. DUGAN *et al.*

1. **Judgment:** ASSIGNMENT OF : WITHOUT RECOURSE. The assignor of a judgment without recourse is not discharged, unless otherwise agreed, from liability upon the implied warranty that it is a valid subsisting judgment for the amount it purports to be, and that no part thereof has been paid, but a transfer by an assignee thereof, ignorant of any defect therein or defense thereto, of simply his " right, title and interest without recourse," will not render him liable upon such implied warranty. BECK, Ch. J., dissenting.

2. —— A judgment plaintiff and his two successive assignees of the judgment, joined in an assignment of it to a third party who had paid the full amount thereof by portions to each successive owner. The assignment was in the following form: " We do hereby assign and transfer to the said, etc., the said judgment, with all its incidents and securities, and all our right, title and interest therein, without recourse on ' us.' " After such payment and assignment had been made it was discovered that by an error of computation of the clerk the judgment was for about $2,000 too much, and, thereupon, the judgment defendant procured a correction of said judgment by an equitable proceeding against such assignee and then holder of the judgment. *Held,* that such assignee against whom the correction had been made could recover of his joint assignors the amount paid by him for said judgment in excess of the true amount thereof. BECK, Ch. J., dissenting.

*Appeal from Muscatine Circuit Court.*

WEDNESDAY, APRIL 30.

ACTION at law by the plaintiffs, who are assignees of a certain judgment, to recover of the defendants, who are their

assignors, the difference between the amount which appeared to be due on the judgment and the amount actually due thereon, which difference, $1,219.60, was the result of a mistake.

Trial to the court; judgment for defendants. The plaintiffs appeal. The facts appear in the opinion.

*Cloud & Broomhall* for the appellants. When one wrongfully retains money, although it was rightfully received, the action for money had and received furnishes a just and appropriate remedy. *Pearson* v. *Lord*, 6 Mass. 85; *Goldsmith* v. *Clausen*, 14 Iowa, 278; *Partridge* v. *Harrow*, 27 id. 96; *North* v. *Bloss*, 30 N. Y. 374.

*Richman & Carskadden* for the appellees, cited *Watson* v. *Chesires*, 18 Iowa, 202; *Reid* v. *Ross*, 15 Ind. 265; *Rice* v. *Stearns et al.*, 3 Mass. 227; *Welch* v. *Lindo*, 7 Cranch, 162; 2 Curtis, 496; Story on Bills, § 214; *Walcott* v. *Timberman*, 28 Iowa, 454; *Scofield* v. *Moore*, 31 id. 241.

COLE, J. — The facts are numerous, and it will conduce to perspicuity to group them with reference to their association and chronology. Thus arranged, they may be stated:

*First.* In July, 1861, Wm. H. Miller, the father of plaintiffs, executed his five several promissory notes, aggregating $3,978; said notes were payable in one, two, three, four and five years, respectively, and were secured by a mortgage upon real estate, executed by said W. H. Miller and Rebecca S. Miller, his wife. In December, 1863, said notes remaining unpaid, suit was brought thereon by Thomas Dugan, the owner of them, and to foreclose the mortgage. At the October term, 1864, the parties agreed, in writing, and filed the same with the clerk, that the plaintiff might have judgment for the amount due on the notes, with proper rebate of interest for those notes not then due, and for foreclosure; and that the defendants might pay said judgment in installments of $1,000 per year, commencing one year from the date of the judgment; the clerk to assess the amount due. Judgment was rendered

.accordingly; but the clerk, in computing the amount due, by a mistake, made it $5,759.76, whereas, in fact, the true amount then due was $4,540.16, the error being for $1,219.60 too much.

*Second.* On the 21st of November, 1864, these plaintiffs paid, by way of purchase, on said judgment, to the plaintiff therein, Thomas Dugan, who is one of the defendants in this action, the sum of $1,008.33. On the 17th day of March, 1865, Dugan assigned said judgment to Andrew Davidson, who is also a defendant in this action; and on the 25th of November, 1865, these plaintiffs paid to said Davidson thereon, $1,200; and on October 19, 1866, the sum of $1,000; and on August 1, 1867, the sum of $2,000. On the 19th day of February, 1868, Davidson assigned said judgment to Peter Jackson, who is also a defendant herein, and to whom these plaintiffs afterward and on the 13th day of May, 1869, paid $2,053, the whole amount of the balance due on the judgment upon its face, as calculated by the clerk. On the same day, the last payment was made, May 13, 1869, the defendants herein executed an assignment of said judgment to these plaintiffs, and which recited the judgment, its date, amount, etc., and also the several payments as above, and concluded as follows: " There-fore, we, the said Thomas Dugan, Andrew Davidson and Peter Jackson, do hereby assign and transfer to the said John W. Miller and Charles S. Miller the said judgment, with all its incidents and securities, and all our right, title and interest therein, without recourse on us." This was duly signed by said parties, the defendants herein.

*Third.* All the foregoing facts transpired without any knowledge by any of the parties, so far as is shown, that any mistake had intervened. Afterward, and in June, 1869, the mistake having been discovered, Dugan was requested to cor-rect it, which he declined. Thereupon the defendant in said judgment, William H. Miller, brought his action in equity against Thomas Dugan, Andrew Davidson, Peter Jackson, John W. Miller and Charles S. Miller, setting out all the fore-going facts, and further charging Dugan with fraud, and asked

to have the judgment corrected. The defendants Dugan, Davidson and Jackson demurred to the petition, which demurrer was sustained. The defendants Millers made default. The plaintiff stood upon his pleading, and in January, 1871, judgment was duly rendered, dismissing the action as to the demurrants, and adjudging that as to the said John W. Miller and Charles S. Miller, the then holders and owners of the judgment, the same should be corrected. No appeal was taken therefrom by any party.

*Fourth.* On the 9th day of August, 1871, this action was brought to recover the amount so overpaid by reason of the mistake. Upon the trial to the court the above facts were proven, and thereon, at the March term, 1872, the court rendered judgment for the defendants.

The fact of the mistake is not controverted or doubted. That the defendants have received in money $1,219.60 with its accumulated interest, in all amounting to a little more than $2,000, to which they had not and have not a shadow of right, either at law or in equity, is conceded. But it is claimed that by reason of the form or terms of the transactions the plaintiffs cannot recover back the money so paid. If this is so, it is a just reproach to the law, and shows that it does not accomplish its purpose — the attainment of justice. The equities of the plaintiffs are so strong and patent as that no man of conscience can either fail to see or resist them.

But it is claimed by the defendants' counsel, that this is a law action and that the rights of the plaintiffs are to be determined by the strict rules of law applied to the contract of assignment of the judgment by the defendants to the plaintiffs. Grant it. The assignment is above set out, and the essential words are : "We do hereby assign and transfer to the said John W. Miller and Charles S. Miller the said judgment with all its incidents and securities, and all our right, title and interest therein, without recourse on us." This assigment is two-fold. It is, first, an absolute assignment of the " judgment with all its incidents and securities, without recourse." *And*, it is, *second*, an assignment of " all our right, title and interest

therein, without recourse." The last does not limit the first; but the rights and liabilities of the parties under the first are just the same as they would be if the last was omitted. That is, the defendants are liable as upon an assignment of the judgment without recourse.

By such an assignment, as we have already held, in *Watson v. Cheshire*, 18 Iowa, 202, the assignor is not discharged, unless it is otherwise agreed and expressed, from liability upon the implied warranty that the paper so transferred is genuine, and not forged or fictitious; that it is of the kind or description which it purports to be; that the assignor has done nothing and will do nothing to prevent the assignee from collecting the claim assigned; that the parties to the instrument are *sui juris* and capable of contracting, and that it has not been paid. That the obligations of a transferrer of paper, without recourse, are substantially the same as those of a transferrer of paper when payable to bearer, by delivery. And the doctrine, as laid down in *Fenn* v. *Harrison*, 3 Term 757, is quoted and approved as follows: "If a man pass an instrument of this kind without indorsing it, he cannot be sued as indorser, but he is not released from the responsibility which he incurs by passing an instrument *which appears to be of greater value than it really is.*" The transfer of the judgment without recourse, then, does not relieve the transferrers from liability upon the implied warranty " that it is of the description which it purports to be," to wit: A valid judgment for $5,759.76. Nor does it relieve them from responsibility if it " appears to be of greater value than it really is," to wit: $5,759.76 instead of $4,540.16. A judgment is a chose in action, and like a negotiable note past due, or a non-negotiable note, may be transferred, and hence, under the express decisions of our own court, the transferrers without recourse are liable if it is not what it purports to be.

A judgment is not in a technical legal sense personal property, nor has the law of sale of personal property ever been applied to it. But, even if we were to look to that law and apply its analogies, we would be led to the same conclusion.

For it is well settled, that if a man sell his horse to another without warranty and without recourse, and at the time of sale the horse be dead, the purchaser may recover the price paid. In such case as in this, so far as the amount of the mistake is concerned, the thing sold had no vital existence.

But, if these defendants had only made the assignment as contained in the second division as above, to wit: " We do hereby assign and transfer all our right, title and interest in the judgment without recourse," then under our decisions in *Wolcott* v. *Timberman*, 28 Iowa, 454, and *Scofield* v. *Moore*, 31 id. 241, the two defendants, who were themselves assignees of the judgment, and ignorant of any mistake therein, would not be liable. Whether the judgment plaintiff would be exempt from liability is not there decided. In the first of the two cases Timberman was himself an assignee and was ignorant of any defect in the subject-matter assigned ; and only " assigned all his interest therein without recourse " to Wolcott. He was held not liable by reason of the defect. So in the other case, Scofield was also an assignee of the judgment, ignorant of any payment on it, and he too made an assignment only of his right, title and interest, without recourse ; and the case is grounded and made to turn upon the facts that he only assigned his interest and acted in good faith. Neither of these cases, therefore, can be relied upon to support the judgment of the circuit court in this case.

There is no force whatever in the suggestion that the judgment creditor, Dugan, may have sold the judgment to his assignee for less than its face or in a lumping trade; for by a proper defense and cross-action in equity as against his co-defendants, their respective rights and equities can be or might have been adjusted in this case; or that can be done in another action. At all events a court of equity is competent to do complete justice between the parties according to the facts, and we cannot be induced to adjudge that these defendants shall keep over $2,000, of money belonging to plaintiffs, and to which they confessedly have no right, sim-

Miller v. Dugan.

ply out of a fear that a court of equity cannot do justice in a proper case between these defendants.

As respects the effect of the judgment on the demurrer for these defendants, and upon default against these plaintiffs, at the suit of the judgment debtor to correct the mistake, it may be said that since these plaintiffs were the owners of the judgment, and their co-defendants had no interest in it, the entire judgment there was probably correct; but neither the demurrants nor these plaintiffs could rely upon it as an estoppel against the other.          Reversed.

Beck, Ch. J., dissenting.— The facts upon which plaintiffs seek to recover in this action appear from the record to be substantially as follows: In 1864, a decree of foreclosure of a morrtgage upon certain lands was entered by the district court of Muscatine county against W. H. Miller and Rebecca S. Miller, at the suit of Thomas Dugan. The decree was entered upon default of the defendants, but the parties agreed upon the basis for the calculation of the amount due upon the mortgage; the calculation itself was left to the clerk of the court who made a mistake of $1,219.61 thereon, and judgment was rendered for a sum greater by that amount than the sum actually due.

Dugan assigned all his interest in this judgment to Davidson, March 17, 1865, $1,008.33 having been paid thereon. $4,200 were paid to Davidson on the judgment, and he assigned all his interest therein to Jackson, February 19, 1868. The balance due on the judgment, $2,053, was paid to Jackson. These payments were made by plaintiffs. On the 13th day of May, 1869, Dugan, Davidson and Jackson united in an instrument of writing assigning the judgment to plaintiffs. The amounts of the different payments, when and by whom made, are recited in this instrument, and it is therein rehearsed that plaintiffs, "under these circumstances, are entitled to be subrogated to the right of plaintiff (in the decree) and assignees, and to hold the judgment with all its incidents and securities, instead and in the place of the judgment plaintiff and the said

assignees thereof." The words of transfer are these: "We * * * do hereby assign and transfer to the said John W. Miller and Charles S. Miller the said judgment with all its incidents and securities, and all our right, title and interest therein, without recourse on us or either of us." The defendants in the judgment, W. H. and Rebecca S. Miller, instituted an action against the judgment creditor and all of the assignees, including plaintiffs, to correct the decree, and for other relief. Plaintiffs in this case failed to appear in that action, and a decree by default against them was rendered, whereby the judgment was so corrected as to cure the mistake therein. This was after the assignment to plaintiffs. The other defendants (Davidson, Jackson and Dugan being joined as such) demurred to the petition, and their demurrer was sustained and this action, as to them, was dismissed.

· The foregoing are substantially all of the facts in the case; plaintiffs seek to recover from Dugan, Davidson & Jackson, who are joined as defendants in this action, the amount in which the judgment exceeds the true sum due upon the mortgage with interest thereon. We are required to determine, whether, upon these facts, plaintiffs are entitled to such relief.

I. It is important to settle in our minds the relation which the parties sustain to each other.

1. Plaintiffs are the assignees of the judgment, defendants the assignors. They have no other relation to each other. Plaintiffs do not stand in the place of the defendants in the judgment, and are clothed with no rights which they, at any time, possessed. The instrument transferring the judgment to plaintiffs recites that it is intended thereby that plaintiffs shall be subrogated to all the rights of the assignees thereof. These rights were to collect the judgment and enforce the lien, etc., and were acquired by the assignment.

2. The obligation and liability of plaintiffs' assignors, and plaintiffs' rights, as against them, are to be determined by the terms of the assignment. By these terms the interest of the several assignors in the judgment were transferred without recourse. By this transfer the assignors did not undertake to

warrant the validity or value of the judgment, or to become liable for any diminution of interest which they claimed in the judgment. They did not become guarantors of the amount due or collectible thereon. The effect of an assignment of a judgment or chose in action of like character, by a transfer of the nature, is fully discussed in *Scofield* v. *Moore*, 31 Iowa, 241, and *Wolcott* v. *Timberman*, 28 id. 454. These cases fully support the conclusion I have just announced. It is not shown that either of defendants had a knowledge of the mistake, or were, in any degree, guilty of any fraud or deceit touching the same.

II. Plaintiffs, as they sustain no other relation to the defendants than assignees, must recover, if at all, as such, and upon the contract of transfer. But as we have seen, defendants are not liable as warrantors of the judgment, and cannot be held liable for any diminution in its value or failure of title or interest therein. Plaintiffs cannot, therefore, under the facts of the case, recover in this action.

III. Plaintiff's condition is not changed, so far as this action is concerned, by the decree rendered against them in the suit brought by the defendants in the foreclosure decree. If those defendants were, in law, entitled to the relief they obtained therein it does not follow that defendants in this action are liable to plaintiffs. Defendants assigned the judgment without liability on account of any failure thereof. If for any reason the judgment, or a part thereof, cannot be collected, plaintiffs were, by the terms of the contract, to bear the loss and cannot look to defendants to make it good. If, therefore, the defendants in the foreclosure decree had a ground for relief against the judgment, plaintiffs cannot have recourse upon their assignors. As between the immediate parties to the judgment, it may be admitted that it was proper to correct the mistake. But by the assignment plaintiffs take the position of the original creditor, Dugan assuming his responsibilities as they do his rights; plaintiffs herein became plaintiffs in the foreclosure decree, so far as the rights of the defendants therein to any relief is concerned.

Defendants' counsel insist that plaintiffs are precluded by the judgment rendered against them, and that the judgment in the same case discharging defendants is available as a defense in this action, I find it unnecessary to examine this position or discuss the questions growing out of it. The view above taken leads me to a satisfactory conclusion in the case.

IV. Upon a cursory view the positions I announce may appear to be in conflict with justice; a better consideration will lead to a different conclusion. As it has been stated, the mistake occurred without the knowledge, fraud or fault of the plaintiffs in the judgment and neither of the other assignors of plaintiffs had any notice thereof. Now, suppose the plaintiff in the judgment had transferred it in consideration of a payment made to him of one-half of the judgment; would it be just, under the contract by which he transferred it, to call upon him to make good to his assignee a deficiency on account of the mistake? No one will so claim. His rights are not affected nor are the equities of the case altered by the fact that he received the face of the judgment. The rights of the other assignors are the same and the like remarks apply to them. Again, suppose we should hold defendants liable to plaintiffs, what measure of recovery shall be fixed as against each? I am unable to answer this question, the record giving me no light thereon. We are required to decide the case upon the facts disclosed by the record, and should it appear that justice may be done between all the parties concerned in equity if plaintiffs recover in this case, we cannot, for that reason, hold defendants liable. This is a law action and the rules of equity, whose authority none of the parties have invoked, as they may be applied under an imaginary state of facts, must not shape our decision.

Suppose that instead of the mistake the case should be this: The judgment cannot be collected on account of the failure of the title to the lands mortgaged and the insolvency of defendants therein, which were unknown to both plaintiffs and defendants in this case. The loss would fall upon plaintiffs, for the simple reason that they had not, in the transfer which they

took from defendants, protected themselves by requiring a proper warranty. No hardship or injustice would be seen in such a case. It is governed by no different rule than the case made by the record before us.

In my opinion the judgment of the circuit court ought to be

Affirmed.