[No. 26771. Department Two. December 21, 1937.]

LAURA HALL, *Respondent and Cross-appellant,* v. WILLIAM MATHEWSON, *Appellant.*[1]

[1]Reported in 74 P. (2d) 209.

*Fred C. Brown,* for appellant.

*Henry Clay Agnew* and *Lloyd Holtz,* for respondent and cross-appellant.

BEALS, J.—In her complaint, plaintiff alleged that on or about May 9, 1935, plaintiff and defendant entered into an exchange agreement, and that pursuant to this agreement, by appropriate instruments of conveyance, they thereafter exchanged certain real and personal property; that plaintiff conveyed to defendant an apartment house in the town of Coeur d'Alene, Idaho, together with all furniture, fixtures and equipment used in connection therewith, subject to $12,400, which encumbrances included "mortgage, contract, tax, and interest;" that defendant conveyed and transferred to plaintiff three tracts of real estate in the city of Seattle, assigned to plaintiff a certificate of purchase issued by the sheriff of King county in the case of Mathewson v. Peterson, together with

". . . an assignment of a deficiency judgment in the original amount of $2,137.24 and interest thereon at the rate of eight per cent per annum from May 26, 1934, until paid, in the case of William Mathewson, substituted for Hazel Kirk, v. L. A. Peterson, individually and as administrator of the estate of Lars Peterson, deceased, No. 262695, in the superior court of the state of Washington, for King county,"

and also assigned three mortgages described in the complaint.

Plaintiff further alleged that, prior to the consummation of the exchange agreement, defendant war-

ranted and represented to plaintiff that the deficiency judgment hereinabove referred to was a good, valid, and existing judgment against the judgment debtors named therein for the amount indicated; that the judgment was collectible in full, including interest; and that plaintiff was induced by these statements to enter into the exchange agreement. It was further alleged that, at the time of the execution of the exchange agreement, the defendant in fact did not have a valid and existing deficiency judgment, to plaintiff's damage in the sum of $2,137.24, for which amount plaintiff demanded judgment.

Defendant answered, admitting the transfer to him of the property in Idaho, and that he transferred to plaintiff other property, together with an assignment of all his right, title and interest "in a purported deficiency judgment" in the action referred to in plaintiff's complaint. By way of an affirmative defense, defendant pleaded that the judgment debtor named in the judgment referred to, L. A. Peterson, was insolvent, and that any judgment against him was worthless, and also that, before the exchange agreement between the parties was consummated, plaintiff's agent examined the files in the action in which the judgment was rendered and accepted the assignment of the judgment with full knowledge of any defect therein. Defendant also asserted certain counterclaims, two of which were allowed, in small amounts, with which we are not concerned.

Plaintiff having replied by appropriate denials, the action was tried to the court, and resulted in the entry of findings of fact and conclusions of law in plaintiff's favor, followed by a judgment against defendant in the sum of $1,237.35, from which judgment defendant has appealed. Plaintiff cross-appealed, claiming that the court should have awarded her judgment in an amount

equal to the face of the judgment. In this opinion, plaintiff will be referred to as respondent, and defendant as appellant.

Appellant contends that the trial court erred in denying his motion for dismissal of the case at the conclusion of respondent's evidence; in refusing to sign findings of fact, conclusions of law, and judgment proposed by appellant; and in signing those proposed by respondent. Appellant's contentions may be resolved into the questions of whether or not the findings are supported by the evidence, and whether or not the court erred in rendering judgment against appellant.

It appears that appellant, William Mathewson, sometime prior to the agreement with respondent, instituted an action before the superior court for King county against L. A. Peterson, individually and as administrator of the estate of Lars Peterson, asking for judgment upon a note for $2,500, executed by L. A. Peterson, individually and as administrator, and asking also for the foreclosure of a mortgage given to secure the note, covering real property in King county. The action was originally instituted by Hazel Kirk (William Mathewson's niece and agent), as plaintiff, but before the entry of judgment, Mr. Mathewson was substituted as party plaintiff, the same counsel continuing as his attorney. The complaint prayed for judgment against L. A. Peterson, individually and as administrator, for the sum of $2,600, principal and accrued interest, together with interest to the date of judgment; for other sums, including attorney's fees; that the mortgage referred to in the complaint be adjudged to be a valid lien on the premises described therein, and be foreclosed; and that the property be sold in the manner provided by law. Plaintiff also asked for a deficiency judgment against L. A. Peterson, personally, and for incidental and general relief.

April 7, 1934, a decree of foreclosure was entered, directing that the property be sold according to law, and that a sheriff's deed issue to the purchaser at execution sale, if no redemption be made. The order of sale was regularly issued and the property sold to the plaintiff, Mathewson, for one thousand dollars, the return reciting that "there remains a deficiency balance of $2,137.24." Thereafter, appellant, as above stated, delivered to respondent an assignment reading as follows:

"In consideration of Ten Dollars ($10.00) and other good and valuable considerations to me in hand paid, I do hereby sell, assign and transfer to Laura Hall all of my right, title and interest in the judgment in the above entitled cause, for her use and benefit, hereby authorizing her to collect and enforce payment thereof in my name, or otherwise, but at her costs and charges, said judgment being for the sum of Twenty-six Hundred Dollars ($2600.00), with interest from the 7th day of April, 1934, and costs in the sum of $13.00, and attorney fees in the sum of $200.00, and being entered in Execution Docket of said superior court in volume 116, at page 290.

"Dated this 15th day of May, 1935,"

which was regularly filed in the case.

The decree providing for no deficiency judgment, it was thereafter sought to amend the decree by adding thereto a paragraph awarding appellant, as plaintiff in that action, a judgment over against the defendants in the action for any deficiency remaining after the application of the proceeds of the mortgaged property to the amount of the judgment. This matter was twice (once in respondent's name as assignee) presented to the superior court, and resulted in denials of the relief applied for. For the purposes of this action, it stands admitted, as adjudicated, that, in the foreclosure action against L. A. Peterson, the plaintiff in that action (appellant here) had no deficiency judgment, but had

merely a judgment foreclosing his mortgage against the property covered thereby.

On the trial, it was expressly conceded by respondent that appellant, at the time of the exchange between the parties, believed that he had a deficiency judgment against the Peterson estate. At the same time, respondent also disclaimed any contention that appellant had guaranteed the collectibility of the judgment, her counsel stating: "We concede that if we had got the deficiency judgment and could not have collected it, we would have no cause of action." These statements by respondent narrowed the issues and simplified the trial.

It is not easy to understand all of the details leading up to the consummation of the transaction between the parties, as disclosed by the evidence. It appears that respondent owned an equity in an apartment house in Coeur d'Alene, Idaho, which she was purchasing under contract. The balance due on the contract, together with a mortgage and some taxes due, amounted to a large sum. Appellant owned several parcels of real estate in Seattle subject to encumbrances, several mortgages, and the certificate of purchase issued by the sheriff in the action above referred to against Peterson and the Peterson estate. Appellant had listed these properties with the brokerage firm of Richey & Heian, who represented both appellant and respondent in the exchange, having received a commission from each.

Respondent herself took no part in the transaction, having been represented by her brother-in-law and attorney-in-fact, Mr. R. O. Mylroie, who testified that he was a broker of long experience, and had been handling respondent's property for ten years. It clearly appears that Mr. Mylroie was accustomed to handling transactions such as that between the parties to this action. Mr. Mylroie had represented respondent in procuring the Coeur d'Alene property, which she re-

ceived in exchange for a Seattle apartment house, for which she had traded another piece of real estate in the same city. Mr. Mylroie had represented respondent in all of these deals.

Respondent was anxious to trade the Coeur d'Alene apartment house, as her contract of purchase was not in very good standing. Messrs. Richey & Heian informed Mr. Mylroie concerning the properties which appellant had listed with them, and after some examination thereof, the men called on appellant to discuss a trade. After some hesitation, appellant went to Coeur d'Alene and inspected the property, and shortly after his return, Mr. Mylroie signed, on behalf of respondent, an exchange agreement, bearing date May 9, 1935. Appellant did not sign any agreement to exchange, but after examination of the Coeur d'Alene property, agreed to trade, and the deal was consummated. No values were placed upon any of the properties, it clearly appearing that the parties carefully refrained from placing valuations, each forming his own estimate as to the value, both of what he was conveying and what he was receiving.

Mr. Mylroie made some investigation concerning appellant's title to the respective properties, but no title insurance policies were demanded. Mr. Mylroie prepared the assignment of judgment, which appellant executed, and the exchange was completed May 15th.

Mr. Mylroie testified that, prior to closing the deal, appellant had told him that the papers in connection with the Peterson suit were at the court house, whereupon appellant and Mylroie called at the office of the clerk of the superior court, where a receipt for the sheriff's certificate of sale was given them, together with some information concerning the manner of assigning a judgment. The witness further testified that, although he had two attorneys whom he consulted

when he desired legal advice, he did not request their opinion in connection with any phase of the transaction with appellant, nor did he himself make any inspection of the judgment in the Peterson case. He did obtain some informal opinion from a title insurance company concerning appellant's real estate, but did not ask the company concerning the Peterson judgment. During the cross-examination of Mr. Mylroie, the following occurred: "Q. It was agreed you would take the property as is? A. Subject to warranty deeds."

Respondent's position is that, upon discovering what she believed to be a breach of the contract on the part of appellant, in that she had not in fact received, as part of the consideration for the exchange, any judgment against the Peterson estate, two remedies were available to her: One, to rescind the contract; the other, to affirm the contract and sue for the value of the property that she should have received, but did not receive, "to-wit, a judgment in the sum of $2,137.34." This action was brought upon the latter theory. Respondent contends that, under her theory of the case, it was not necessary that she prove the value of the respective properties exchanged, but simply the value the judgment would have had, had one existed.

Considerable evidence was introduced by appellant to the effect that any judgment against L. A. Peterson and the Peterson estate was worthless. Respondent, however, has conceded that she would have no claim against appellant if she had, in fact, received an existing judgment, even though the same were uncollectible. Probate of the estate of Lars Peterson, deceased, was initiated sometime prior to the transaction between these parties, and it appears that the estate owned a large amount of property of considerable value. It also clearly appears that the estate finally dwindled until its net value was insufficient to pay the fee al-

lowed counsel for the administrator. In 1931, this fee was fixed at $26,300. The attorney had accepted on account some real estate, but in 1935 there was still a balance due him. The conclusion that a judgment against L. A. Peterson was then worthless is inescapable. Respondent argues that the record shows that the estate had some net value for a time after May, 1935, and that a judgment against the estate would then have been collectible.

In summing up the evidence, the trial court stated that, in fairness to appellant, the damages which the court felt respondent was entitled to recover could not be computed on the face value of the judgment itself, and that there were several serious questions concerning the collectibility of the judgment. The court then estimated that the judgment was worth sixty per cent of its face value, taking into consideration also the matter of the cost to respondent of collecting the judgment, had one existed. In its formal findings of fact, the court found that, prior to the consummation of the exchange agreement, appellant had stated to respondent that he had a deficiency judgment against the estate of Lars Peterson, and that respondent was induced to enter into the exchange agreement, relying upon these statements; that, in fact, appellant had no such deficiency judgment, but had such existed, it would have been worth $1,282.35, for which amount, less two small items allowed appellant on his cross-complaint, respondent was entitled to judgment. The conclusions of law and judgment followed the findings.

■ This, in effect, is an action for damages because of partial failure of consideration. Respondent claims no warranty as to value of the judgment, having conceded that, had the judgment been worthless, she would have had no cause of action. It was then incumbent upon respondent to prove the value of the judg-

ment, which under her theory would be the measure of her damage, it having transpired that there was, in fact, no judgment in existence. It appears beyond question that neither party made any representations whatsoever as to the value of any of the property exchanged, with the single exception that Mr. Mylroie and another witness who testified for respondent stated that appellant had said that the judgment was good. As to all the other properties, each party relied entirely upon such investigation as he cared to make. It is curious to note that respondent did not even demand that the titles which appellant was to transfer to her be insured.

The assignment of the judgment upon which respondent claims title contains no warranty either as to ownership or amount. By it, appellant assigned all his "right, title and interest" in the judgment; the judgment being described as for $2,600, its original amount, interest, costs and attorney's fees. The assignment was prepared by Mr. Mylroie, and refers to no deficiency. It amounts to no more than a quitclaim to the judgment.

This is not a case in which respondent contends that the consideration for what she gave entirely failed. She relies merely upon a partial failure of consideration, having elected to rely upon the contract and sue for her damages. Any recovery on her part must be limited to her actual loss.

In the case of *Noyes v. Adams*, 76 Wash. 412, 136 Pac. 696, the court said:

"Her remedy was, therefore, as she correctly conceived, an action in damages for a breach of the contract, but her measure of damages was not, as she seems to have incorrectly conceived, a return of the entire sum advanced. She was entitled to recover her actual losses and no more. As to what these were, the record is silent. . . . But there was evidence

to the effect that Noyes was insolvent, and this we think overcomes the presumption that perhaps arises from the execution and delivery of the note, namely, that the maker of the note is able to make good the promise contained therein. The record, therefore, shows nothing more than the execution of a contract and its partial breach. While this in some instances would show a right to nominal damages, it is not so in this character of action. The rule in this jurisdiction is that, in an action for damages, the object of which is to recover damages only, a failure to prove substantial damages is a failure to prove the substance of the issue, entitling the defendant to a judgment."

In the case of *Jones v. Elliott,* 111 Wash. 138, 189 Pac. 1007, an action for damages based upon alleged misrepresentations in a land trade, it was said:

"Since the gravamen of the action is damages, it is manifest that there could be no recovery unless the respondent had suffered damages, and it is equally manifest that she could have suffered no damages unless she gave value for the note. Hence, on this branch of the case, it was competent, if not necessary, to show the value of the property the respondent parted with in the exchange, and hence proper to submit to the jury the question whether the property given in exchange had value."

The same rule applies in the case at bar, that is to say, unless the judgment which respondent contends she was entitled to receive had value, she has not been damaged.

In the case of *Henderson v. Rowe,* 93 S. W. (2d) (Tex. Civ. App.) 589, the court of civil appeals of Texas said:

"The measure of damages for the breach of a contract of trade or exchange of properties is the actual loss sustained in absence of definite agreement fixing a definite price for each piece of property traded or exchanged."

In the case of *Giffert v. West*, 33 Wis. 617, the supreme court of Wisconsin used the following language:

"The value of a chose in action, like a note or other promise or obligation in writing for the payment of money, is intrinsically nothing. It cannot be estimated as we estimate that of a horse, an acre of land, or other article of visible, tangible property. Its value depends on the pecuniary condition, or ability to pay, of the parties liable thereon; and hence the proper inquiry, where the value is in controversy, always is, Are the parties to it solvent and able to pay their debts?"

The opinion of the supreme court of Iowa, in the case of *Scofield v. Moore*, 31 Iowa 241, is of interest. It was held that the assignor of a judgment, a portion of which had been paid, of which fact the assignor was not advised, was not liable to the assignee for the amount so paid, the assignor having transferred only his right, title and interest in the judgment, the words "without recourse" having been included in the assignment. The court held that the words of conveyance clearly indicated the absence of any intention to warrant the validity or value of the judgment, or that it was collectible. The court went on to say that the words "without recourse" merely gave additional force to the view which they had already expressed. As we read the opinion, the same result should have been reached had the assignment not contained the words "without recourse." The court noted that it was also contended that there was a mutual mistake as to the extent of the thing sold. It was held, however, that the language of the contract of assignment plainly indicated that the value of the judgment was not understood as being within the stipulation of the contract.

In the case at bar, the instrument of assignment clearly does not warrant that any judgment can be collected or that the judgment debtor was solvent.

Respondent was to pay any costs of attempts to collect the supposed judgment. As was said in the case of *Reid v. Ross,* 15 Ind. 265:

"The assignment simply transfers the judgment to the assignee, and no liability, as to the solvency of the judgment debtor, attaches, in the absence of fraud or express stipulation. We see no good reason why this transfer does not stand upon the same ground as the transfer of any personal chattel."

The same rule was followed by the supreme court of Indiana, in the case of *Shirts v. Irons,* 37 Ind. 98.

All the records were open to any examination which respondent or her agents cared to make.

Respondent, having accepted and relied upon an assignment of the certificate of purchase issued by the sheriff in the action of Mathewson against the Peterson estate, might well have deemed it advisable to take an assignment of the judgment in the action, even though it was known that no deficiency judgment existed. On the face of the documents which appellant signed, this would be an entirely reasonable proposition.

Passing that question, however, it was incumbent upon respondent to prove that the deficiency judgment which she contends she should have received had value, and if so, in what amount. As we read the record, this she entirely failed to do. There is absolutely nothing which even suggests that L. A. Peterson owned anything except an expectancy as a distributee in the estate of Lars Peterson, deceased. In our opinion, the preponderance of the evidence indicates that in May, 1935, and thereafter, any judgment against the estate of Lars Peterson was worthless. In its findings of fact, the trial court states merely the conclusion of fact that, at the time of the exchange, such a judgment as respondent thought she was pro-

curing "would have had the value of $1,282.35." No facts are stated which indicate the basis upon which the trial court reached this conclusion, and in our opinion the record as a whole does not support the same. It appears to be merely a guess.

Respondent contended that a judgment for the amount of the purported deficiency would have been worth its face value. Appellant contended that such a judgment would have been worthless. There is nothing in the record which supports the finding which the trial court made. In its oral summation of the evidence, the trial court stated, referring to the judgment, that "there were two or three serious questions about its being available and being collectible even against the estate," the court again referring to these questions as being serious.

We conclude that respondent failed to prove any damage with that degree of definiteness which the law requires, and that the trial court erred in rendering judgment in her favor.

The judgment appealed from is accordingly reversed on appellant's appeal, with instructions to dismiss respondent's complaint.

STEINERT, C. J., MILLARD, GERAGHTY, and ROBINSON, JJ., concur.