REUBEN R. THRALL *v.* JAMES R. NEWELL.

Words used in a contract are not to be construed in a frivolous or ineffectual sense, when a contrary exposition can be given them; and where the meaning of the language used is doubtful, or susceptible of two senses, that is to be adopted, which would give effect to the instrument as a legal contract, rather than that which would render it inoperative.

Thrall *v.* Newell.

The defendant executed to the plaintiff a written assignment in these words, "I hereby assign to Reuben R. Thrall a note in my favor against Theodore Woodward and John H. Philips, dated 13th Nov. 1838, for one hundred and fifty dollars payable in one year from date with use for value received;" and it was held, that the words "for value received" were not merely descriptive of the note assigned, but that, *prima facie* at least, they imported a sufficient legal consideration for the assignment.

And it was held, that such instrument, in describing the property assigned as "a note," must be construed as an express warranty, on the part of the defendant, that it was a valid note, and that the signers were of sufficient capacity to contract, when they executed it;—and *quære*, whether such a warranty would not be *implied* from the sale, without words indicating an express warranty.

And where it appeared, in such case, that the note assigned to the plaintiff was invalid as to one of the signers, by reason of his insanity at the time he signed the note, and that an action upon the note had been successfully defended by him upon that ground, and that the other signer had removed from the state, it was held, that the plaintiff, in an action upon the warranty contained in the written assignment, was entitled to recover the difference between the actual value of the note and the amount appearing due upon it.

Assumpsit upon an alleged warranty, that a promissory note for one hundred and fifty dollars, transferred by the defendant to the plaintiff for a valuable consideration, and purporting to be signed by Theodore Woodward and John H. Philips, and bearing date November 13, 1838, was a good and valid note;—the plaintiff averring, that Woodward had recovered a judgment in his favor, in an action commenced by the plaintiff upon the note, upon the ground of his insanity at the time of signing it. Plea, the general issue, and trial by jury, April Term, 1846,—Williams, Ch. J., presiding.

On trial the plaintiff gave in evidence the note described in his declaration; which was in these word,—"Castleton, Nov. 13, 1838. 'For value received we promise to pay James R. Newell, or bearer, 'one hundred and fifty dollars in one year from date with use. '(Signed,) *Theodore Woodward; Jno. H. Philips.*" The plaintiff also gave in evidence a written instrument, signed by the defendant, dated February 18, 1839, which was in these words,—"I hereby 'assign to Reuben R. Thrall a note in my favor against Theodore 'Woodward and John H. Philips, dated 13th Nov, 1838, for one

'hundred and fifty dollars payable in one year from date with use 'for value received." The plaintiff also gave in evidence the record of a judgment in favor of Theodore Woodward against himself, in an action commenced by him against Woodward upon the note, and proved, that Woodward defended that action and recovered the judgment on the ground of his insanity at the time he signed the note, that the plaintiff reviewed, that Woodward died previous to the term of the court at which the action was to have been again tried, and that thereupon the suit was discontinued. To the admission of all this evidence the defendant objected; but the objection was overruled by the court. The plaintiff also gave evidence tending to prove that Woodward was insane, at the time he executed the note. It appeared that Philips removed from the state before the note became due; and it did not appear, that any attempt had been made to collect the note from him, except that the plaintiff, when the note became due, made a demand of payment at the house last occupied by Philips in this state, and gave immediate notice to the defendant of non-payment.

The defendant requested the court to charge the jury, that, notwithstanding they might find, from the evidence, that Woodward was insane at the time of executing the note, the plaintiff was not entitled to recover; and that the written assignment, executed by the defendant, did not furnish evidence of any consideration for the contract declared upon, or of any warranty, on the part of the defendant, as to the validity of the note against Woodward.

But the court instructed the jury, that the written assignment executed by the defendant did furnish evidence of the consideration of the contract declared upon; and that, if they found from the testimony that Woodward, at the time of executing the note, was incapable of making a contract by reason of his insanity, and that for that reason the note was void as to him, and that the suit instituted by the plaintiff against him was defended on that ground, the plaintiff would be entitled to recover the amount of the note and interest, notwithstanding he had made no attempt to collect the amount of the note from Philips.

The jury returned a verdict for the plaintiff for the amount of the note and interest. Exceptions by defendant.

Thrall *v.* Newell.

*Ormsbee & Edgerton* for defendant.

The instrument executed by the defendant was no evidence of any consideration having passed from the plaintiff to the defendant. The words "value received" are words of description merely, referring to and used in immediate connection with the other words, descriptive of the note, and obviously only intended to complete its description. The note is entirely different from a forgery. It is confessedly a good and legal note against Philips. If Woodward was insane at the time he executed it, in the absence of all knowledge of that fact on the part of the defendant, and, of course, of all fraud on his part, even if the note, as such, could not have been recovered of Woodward, the true value of the consideration, which passed to Woodward upon the execution of the note, might have been recovered. At all events, the plaintiff should have offered to return the note to the defendant, in order that he might pursue all his remedies, not only against Woodward, but against Philips.

*Thrall & Pond* for plaintiff.

1. The written assignment contained a warranty, that the note transferred was genuine, and that it was valid and due. 1 Sw. Dig. 435–9. Story on Bills 126. Bayl. on Bills 485, 148, n. 86. *Coolidge* v. *Brigham*, 1 Met. 547. *Lobdell* v. *Baker*, 3 Met. 469. *Herrick* v. *Whitney*, 15 Johns. 240. *Markle* v. *Hatfield*, 2 Johns 455. *Johnson* v. *Titus*, 2 Hill 606. *Eagle Bank* v. *Smith*, 5 Conn. 71, 2 Bl. Con. 451. 1 Chit. Pl. 92. *Strong* v. *Barnes*, 11 Vt. 221.

2. The consideration alleged and proved was sufficient. *Brooks* v. *Page*, 1 D. Ch. 340. *Jerome* v. *Whitney*, 7 Johns. 321. *Walrad* v. *Petrie*, 4 Wend. 575. 3 Johns. 485. 1 Vt. 247.

The opinion of the court was delivered by

HALL, J. It is in the first place insisted, in behalf of the defendant, that the written assignment furnished no evidence of a consideration for the contract. It is said, that the words "for value received," in the assignment, are not to be considered as forming a part of the contract of assignment, but as merely descriptive of the note. By comparing the note and assignment it will be seen, that (passing over the dates) the words "for value received" are the first in the note and the last in the assignment; and that therefore no

argument can be drawn from the sameness in the order of the language of the two papers, that those words were copied into the assignment from the note. Indeed, if the mere order and appropriateness of language be considered, the words seem quite as naturally to belong to the assignment, as to be descriptive of the note. The objection concedes, that the words are not out of place in the assignment; for it proceeds upon the ground, that the assignment, without them, is without consideration and void. Upon that assumption the words are both appropriate and important, as part of the assignment. But as descriptive of the note, they are unnecessary and useless. The description is sufficiently perfect for all purposes of identity without them.

It is a rule of law, that words are not to be construed in a frivolous or ineffectual sense, when a contrary exposition can be given them ; and where the meaning of the language used is doubtful, or susceptible of two senses, that is to be adopted, which would give effect to the instrument as a legal contract, rather than that, which would render it inoperative. Chit. on Cont. 79, 80. Under these rules we think the words must be considered as forming part of the contract of assignment. Besides, if it were indifferent in all other respects, whether the words were to belong to the assignment, or to the note, they must be held as belonging to the assignment, under the final rule, where all others fail, that the language of a contract shall be construed most strongly against the contracting party. Chitty on Cont. 95–97.

The words "for value received" forming a part of the contract of assignment, they must be held to furnish sufficient evidence, *prima facie* at least, of a consideration for the assignment. *Lapham* y. *Barrett*, 1 Vt. 247. *Brooks* v. *Page*, 1 D. Ch. 340. *Whitney* v. *Stearns*, 4 Shepley 394. *Parish* v. *Stone*, 14 Pick. 198.

It is farther objected, that there was no sufficient evidence of the warranty of the validity of the note by the defendant.

It is said by Judge Phelps, in the *Bank of St. Albans* v. *Farmers'* & *Mechanics' Bank*, 10 Vt. 145, that, notwithstanding the cases of *Bree* v. *Holbech*, Doug. 654, and *Price* v. *Neal*, 3 Burr. 1354, "it seems now to be well settled, that a person giving a security in payment, or procuring it to be discounted, vouches for its genuineness," but that the rule has not been extended to a case, where the party,

Thrall *v.* Newell.

when receiving or discounting the paper, is presumed, from his relation to it, to have the means of correct knowledge as to its genuineness. This view of the law is cited with approbation by the court in *Gilman* v. *Peck*, 11 Vt. 516, and seems, indeed, to be well supported by the more modern cases, both in England and in this country. *Jones* v. *Ryde*, 5 Taunt 488. *Fuller* v. *Smith*, R. & M. 49. *Young* v. *Cole*, 3 Bing. N. C. 724. *Markle* v. *Hatfield*, 2 Johns. 455. *Young* v. *Adams*, 6 Mass. 182. *Bank of U. S.* v. *Bank of Georgia*, 10 Wheat. 333.

In the present case the plaintiff, who received the paper, did not stand in any relation to the maker of the note, which would furnish him with the means of determining its genuineness; while the defendant, who procured the note to be discounted, did stand in such relation, being the payee of the note, and to whom it may be supposed to have been delivered by the maker; and there seems a peculiar propriety in holding him responsible for its genuineness. If one or both of the signatures to the note disposed of by the defendant had been forgeries, there would seem to be no question, but that the defendant would have been liable on an implied warranty; and the only real doubt is, whether such implied warranty extends beyond the fact of a mere forgery, and embraces a want of capacity in the party to make the contract. The cases before cited are all of forged paper, and no authorities are found, which are directly applicable to the precise question in this case. The case, however, of *Lobdell* v. *Baker*, 3 Metc. 469, has a strong analogy to the present; and seems, indeed, to have been decided on principles, that would make the implied warranty of one, who sells a note, extend to the capacity, to make a valid contract, of the parties, whose names appear upon it.

In that case the plaintiff had purchased a negotiable note in the market, but not of the defendant, which note had been endorsed by a minor, and the action was against the defendant for deceit in procuring the minor to indorse the note, and then putting it into circulation. No representation by the defendant, that the indorsement was valid, was shown, or any actual intention to defraud proved; but the court held, that the disposing of the note for a valuable consideration was, by necessary implication, an affirmance, that the indorser was a person capable of indorsing, and of binding himself by such indorsement; and, upon the ground of such implied affirmation,

connected with his knowledge of the minority of the indorser, the defendant was held liable.

It is said by Mr. Rand, in his valuable edition of Long on Sales (204) that "there is an implied warranty in every sale, that the thing sold is that for which it was sold;" and the cases cited by him appear to sustain the doctrine. This rule seems well applicable to the sale of a written evidence of a liability, where the purchaser is understood to inquire for himself into the ability of the parties to the paper, but usually takes it for granted that the paper is genuine, —that it is signed by persons capable of binding themselves by contract.

I am therefore strongly inclined to think, that the defendant should be held liable upon a warranty of the note, implied by law from the sale of it. But it is unnecessary to put the decision on that ground, as we think the words of the assignment may be well construed as an express warranty, that the note was a valid note of the persons, whose names appeared upon it.

It seems to be well settled, that words of description in a bill of sale, or a bill of parcels, may be taken as a warranty, that the article sold is what it is described to be. *Tye* v. *Fynmore*, 3 Camp. 462. *Gardiner* v. *Gray*, 4 Camp. 144. *Bridge* v. *Wain*, 1 Stark. R. 504. *Shepherd* v. *Kain*, 5 B. & Ald. 240. *Hastings* v. *Lovering*, 2 Pick. 214. *Coolidge* v. *Brigham*, 1 Met. 547. In the case of *Coolidge* v. *Brigham* it was held, that a letter from the defendant to the plaintiff, inclosing a note and describing it as signed and indorsed by the persons, whose names appeared upon it, was an express warranty, that it was so signed and indorsed; and the name of the indorser proving to be a forgery, the defendant was held liable for an express warranty. In this case the note is described, in the assignment, as a note of the defendant "against Theodore Woodward and John H. Philips;" which is equivalent to saying it was a valid note against them; for if it was a forgery, or if, by reason of the insanity of Woodward, he was incapable of binding himself by such a note, the note could not, in legal contemplation, be called a *note* against him; it was, so far as he was concerned, mere waste paper. The jury having found that Woodward was not liable on the note, by reason of his insanity at the time his signature was

Thrall *v.* Newell.

placed there, we think the defendant must be held liable for a breach of his express warranty.

It is also objected, that the rule of damages adopted by the court was incorrect; and this objection, we think must prevail.   The rule of damages, in the ordinary case of a warranty of the quality of goods, is understood to be the difference between the value of the goods, as they should have been by the warranty, and their actual value.   In *Coolidge* v. *Brigham,* 1 Metc. 547, where a note was executed by the maker and the indorsements were forged, and the note had not been returned to the defendant, the court say, that the rule of damages, in an action on the warranty of the note, would be the difference between the amount of the note and its actual value.   In this case the jury were instructed, that, if they found for the plaintiff, he would be entitled to recover the amount of the note and interest.   It does not appear from the bill of exceptions, that the note, which is still retained by the plaintiff, was shown to be worthless; and as, for any thing that has been made to appear, the note is valid against Philips, it cannot be taken to be of no value.   Whatever its value is against Philips, the plaintiff cannot be said to have lost by the breach of the warranty, and he should not recover it of the defendant.   The verdict should, at least, have been lessened by that amount.   Whether it could have been farther lessened, by showing that the note, if it had been valid against Woodward, would have been worth less than the amount of it, is unnecessary to be decided, that question not having arisen in the case.

The judgment of the county court is set aside and a new trial granted.