## WATSON v. CHESIRE *et al.*

1. **Promissory note: ACTION BY INDORSEE: PRIVITY: FRAUD.** The second indorsee of a promissory note cannot maintain an action against the original payee, in the absence of any transaction directly between them upon the written contract of indorsement. The second indorsee cannot maintain an action against the original payee, upon fraudulent representations made by him to the first indorsee, in the transaction in which the assignment was made.

2. —— **INDORSEMENT WITHOUT RECOURSE.** When a note is transferred without recourse, as when transferred by delivery only, the transferrer is exempt from all the ordinary responsibilities which attach to such transfer; but he is not discharged, unless it is otherwise agreed and expressed, from liability upon implied warranty that the paper so transferred is genuine, and not forged or fictitious; that it is of the kind or description which it purports to be; that the assignor has done nothing, and will do nothing, to prevent the assignee from collecting the claim assigned; that the parties to the instrument are *sui juris*, and capable of contracting; that it has not been paid; and he is liable for any fraud practiced upon the assignee in the transaction of the transfer.

3. —— **FORM OF ACTION.** But, in such cases, the action is not upon the paper transferred, but against the vendor or transferrer for the original consideration or its value, or for the fraud practiced.

4. —— **EFFECT OF INDORSEMENT.** The indorsement of a promissory note transfers to the indorsee the title to the note, but not the right to maintain an action for fraud practiced by the original payee upon the indorser in the contract of transfer. *Semble*, that the indorsee may specially assign his cause of action against his indorser for such fraud.

5. —— **FRAUDULENT SUPPRESSION OF FACTS.** In an action for fraudulent representations, made in the transfer of a promissory note, the court properly instructed the jury that, if the defendants, or either of them, fraudulently suppressed or withheld facts material to be known, such suppression constituted a sufficient cause of action, if any injury resulted to the plaintiff therefrom.

6. **Evidence: INTENTION.** Where the knowledge, belief or intention of the witness is a material fact, it may be testified to the jury the same as any other fact; giving the opposite party a liberal scope in cross-examination.

7. —— **INSTRUCTION.** When such evidence is submitted, the court may properly state to the jury that the statement of a witness as to his intention is not conclusive, but, in judging of his knowledge, belief, or intention, they should consider all the facts and circumstances.

*Appeal from Warren District Court.*

MONDAY, APRIL 3.

LIABILITY OF INDORSER "WITHOUT RECOURSE:" EVI-
DENCE, &C. — This is a joint action, against John and
Wesley Chesire and John M. Griffith. The facts, necessary
to an understanding of the case, are as follows: John and
Wesley Chesire sold, May 15, 1858, certain land in Mills
county to one Moore, receiving, for part of the purchase-
money, his note, secured by a mortgage on a portion of the
land sold.

Afterwards, January 20, 1860, the Chesires traded or
sold the note and mortgage of Moore (which note was
dated May 15, 1858, was for the sum of $743, payable
one year after date, with ten per cent interest) to the
defendant Griffith, receiving in payment or exchange 90
acres of land, a mare and a heifer, variously estimated by the
witnesses as being worth from $250 to $400, and upwards.
*The Chesires indorsed* to Griffith *the note* and *mortgage, with-
out recourse to them.*

Afterwards, about April, 1860, Griffith traded or ex-
changed the Moore note and mortgage to the plaintiff,
Watson, for certain land, also indorsing the same, *without
recourse.*

Afterward, Watson brought suit on the note and mort-
gage against Moore, the record in which cause is before us.
By that, it appears that Moore defended on this ground, viz.:
that he purchased certain land of the Chesires for $2,340;
paid all thereon except the note in suit; that the Chesires
falsely and fraudulently misrepresented the quality of a
portion of the land to the damage of Moore in a sum more
than equal to the amount of the note. The only parties
to that suit were Watson and Moore; but the Chesires, as
well as Griffith, had notice of the suit from Watson, and

the Chesires gave testimony therein. There was a jury trial, resulting in a verdict and judgment in favor of Moore. After Watson thus failed in his action against Moore, he brought this action against the Chesires and Griffith jointly.

The nature of the pleadings and questions raised will appear in the opinion. There was a jury trial on the second count of the petition (viz., the one setting up fraud), and a verdict and judgment for the defendants.

The plaintiff appeals.

*J. S. Polk* for the appellant.

*C. C. Nourse* for the Chesires.

No appearance for Griffith.

DILLON, J.—I. The first error assigned by the plaintiff is, that "the court erred in sustaining the defendants' demurrer to the *first* count of the petition." This makes it essential to set out the substance of this count with accuracy.

1. PROMIS-
SORY NOTE:
action by
indorsee:
privity:
fraud.

It commences by alleging that John and Wesley Chesire held and owned the Moore note and mortgage, describing them; that, January 20, 1860, the said Chesires, for a good and valuable consideration (*but not alleging what*), sold and assigned said note to their co-defendant, Griffith, whereby they falsely warranted the said note to be genuine, unpaid and unsatisfied in any way; that afterwards Griffith, assignee as aforesaid, sold and assigned said note to the plaintiff for a good and valuable consideration, whereby he, Griffith, falsely warranted, &c., as above; that plaintiff relied upon said warranties and paid *Griffith* for said note; that the said note, at the time the same was assigned by Chesires to Griffith, and by Griffith to the plaintiff, "had been fully paid, extinguished, and nothing was due thereon from the said Moore to the defendants or either of them;" whereby

"the defendants fraudulently deceived the plaintiff, to his damage" in the amount of said note. Copies of these assignments are set forth, showing that they were made "*without recourse.*" The first was an assignment *in full* by J. and W. Chesire to "John M. Griffith or order, without recourse." The next was in blank, as follows.: "Without recourse. John M. Griffith."

To this the court sustained a demurrer, both in behalf of the Chesires and of Griffith.

We will consider the case, with respect to the Chesires, separately and first.

Upon consideration, we think the demurrer was rightly sustained.

It is only by treating this count as founded upon *the indorsement*, that the *plaintiff's* action against the *Chesires* has any color or plausibility.

There is, except through the indorsement, no privity between the plaintiff and the Chesires. The latter sold the note to Griffith, and not to the plaintiff. The plaintiff purchased of Griffith, not of the Chesires. No transaction is alleged between the plaintiff and the Chesires. Hence, the plaintiff's right to sue the latter, if it exists at all, must exist by virtue of the contract of indorsement.

Now if this count be treated as one *ex contractu* upon the indorsement, it is not maintainable, because the indorsement, on *its face, negatives and rebuts any personal liability on the part of the Chesires.* This is the object and effect of an indorsement "without recourse."

Such an indorsement transfers title, but stipulates for exemption from the ordinary responsibility of an indorser. It will not, however, protect the assignor from liability over from fraud and misrepresentation in the assignment of the note. In point, see *Welch* v. *Lindo*, 7 Cranch, 159; 2 Curtis' ed., 496; *Epler* v. *Funk*, 8 Penn. (8 Barr), 468, 469; *Prettyman* v. *Short*, 5 Har. (Del.), 360; *Richardson*

v. *Lincoln*, 5 Metc., 201; *Rice* v. *Stearns*, 3 Mass., 225; *Waite* v. *Foster*, 33 Maine, 424; *Goupy* v. *Harden*, 7 Taunt., 159, per DALLAS, J.; Chitty on Bills, 218, 225, 235; Story on Notes, § 146; *Lyons* v. *Miller*, 6 Grat. (Va.), 427.

Suppose it to be true that, in the transfer of the Moore note by Chesires to Griffith, the latter was deceived and defrauded. This would give Griffith his right of action against the former. Suppose it to be true, also, that the plaintiff was deceived and defrauded by Griffith. This would give him a right of action against the latter. *He* could not sue the Chesires for the fraud they practiced upon Griffith.

So that the reasoning drives us back to the point at which we started, viz., the plaintiff cannot sue Chesires *ex contractu*, having had no transaction with them except upon the indorsement. If the first count is treated as being founded upon that, it fails, because the indorsement itself not only does not create, but expressly avoids, a cause of action. (*Vide authorities above cited.*)

The case presents the question, *What*, in the absence of special contract, are the obligations of the transferrer of negotiable paper, who indorses it *without recourse?* It seems to us that the obligations of a transferrer of such paper, by indorsement *without recourse*, are substantially the same as those of a transferrer of such paper when payable to bearer by delivery merely.

2. — indorsement without recourse.

It is a clear and well-settled doctrine, that such a transfer does not make the party liable as indorser. When he indorses paper without recourse, or transfers it (if payable to bearer or if indorsed in blank) by delivering merely, without putting his name upon it, he ceases to be a party to the paper. He cannot be made liable as a party to or upon the instrument.

There may be a liability in such cases, but it arises upon the transaction, upon the facts of the case, to be asserted in

an action for the original consideration *or its value, or for fraud practiced*, and not upon the indorsement or upon the paper transferred. Speaking of the same general subject, in the well-known case of *Jones* v. *Ryde*, 1 Marsh., 157, 5 Taunt., 489, GIBBS, Ch. J., says: The ground of resisting this claim is, that it was a negotiable security without indorsement; and that when the holder of a negotiable security passes it away, *without indorsing it*, he means not to be responsible upon it. This doctrine was fully discussed in the case of *Fenn* v. *Harrison*, 3 T. R., 757; and the proposition is true, but only to a certain extent. "If a man pass an instrument of this kind without indorsing it, *he cannot be sued as indorser*, but he is not released from the responsibility which he incurs by passing an instrument which appears to be of greater value than it really is." And this case is recognized as authority in the text-books, and in England in subsequent cases (*Wilkinson* v. *Johnson*, 3 B. & C., 428), and in this country. (*Cabot Bank* v. *Morton*, 4 Gray, 156.)

The accepted doctrine on this subject may be thus stated: Where a note is transferred without recourse, equally as when it is transferred by delivery only, the transferrer is exempted from all the ordinary responsibilities which attach to such a transfer. (See authorities first in this opinion cited.)

But he does not, unless such is the agreement, understanding or contract of the parties, stand free from all obligations. Thus, unless otherwise agreed, he warrants that the paper so transferred is genuine, and not forged or fictitious. (*Jones* v. *Ryde, supra; Fuller* v. *Smith*, Ryan & Mood., 49; 1 C. & P., 197; Chitty on Bills, 245; Story on Notes, § 118; *Aldrich* v. *Jackson*, 1 R. I., 218; 2 Parsons on Notes and Bills, ch. 2, § 2, p. 37, and authorities; *Lyons* v. *Miller*, 6 Gratt., 247; *Morrison* v. *Currie*, 4 Duer, 79; *Cabot Bank* v. *Morton, supra; Rieman* v. *Fisher*, 4 Am. Law Reg., 433.) He warrants by implication, *nothing to the*

*contrary being shown*, that it is of the kind and description that it purports on its face to be. (*Allen* v. *Pegram*, 16 Iowa, 163, in relation to illegal bank stock; *Gompertz* v. *Bartlett*, 2 Ellis & Bl., 849; 24 Eng. L. & Eq., 156, where the vendor of a bill was held liable, though he did not put his name upon it; *Young* v. *Cole*, 3 Bing. N. C., 724, as to liability of vendor on the sale of invalid Guatemala bonds; and see, further, the authorities above referred to, and *Kempson* v. *Sanders*, 11 Bing., 5; Redfield on Railways, 50, *note;* Hilliard on Sales, p. 456, § 37; *Eaton* v. *Mellus*, 7 Gray, 566, which decides that there is an implied warranty that the assignor has done nothing, and will do nothing, to prevent the assignee from collecting the claim assigned.)

So there is an implied warranty, unless it is otherwise agreed, that the parties to the instrument are *sui juris*, and capable of contracting. (*Theall* v. *Newell*, 19 Verm., 202; *Lobdell* v. *Baker*, 1 Metc., 193; 3 Id., 469; *Jones* v. *Crosthwaite*, 17 Iowa, 393, and cases; 2 Pars. on Notes and Bills, 39; but no implied warranty of their *solvency*. Chitty on Bills, 245; 2 Parsons on Notes and Bills, 41; *Epler* v. *Funk*, 8 Penn., 468; *Burgess* v. *Chapin*, 5 R. I., 225.) So there is an implied warranty that the instrument transferred has not been *paid*. And, generally, it is laid down by Mr. Parsons (2 Notes and Bills, ch. 2, p. 41), who follows and closely copies Mr. Chitty (Chitty on Bills, 247), that, "in all cases where the assignor" (we may add, whether by delivery or by indorsement, made "without recourse"), "of a bill or note *knows* it to be of no value, and the assignee receives it in good faith (not aware of the fact), paying a valuable consideration of any kind, the assignor may be compelled to repay or return the consideration thus received." And see *Burgess* v. *Chapin*, 5 R. I., 225, which holds an assignor without indorsement to be

liable upon the ground of fraud — the rule of *caveat emptor* otherwise applying.

But, in all such cases, the action is not upon the paper transferred, but against the vendor or transferrer upon and 3. —— for the original consideration or its value, or for the fraud practiced; and the latter is "liable to the vendee," to use the language of AMES, Ch. J., in *Aldrich* v. *Jackson*, 5 R. I., 218, "for what he has received from him on the ground of failure of consideration." (Without quoting, see 2 Parsons on Notes and Bills, 37, and *note; Kephart* v. *Butcher*, 17 Iowa, 240; Chitty on Bills, 246, and authorities cited; Story on Notes, § 117 (5th ed.), and cases cited in notes 4 and 5; *Welch* v. *Lindo*, 7 Cranch, 159; *Prettyman* v. *Short*, 5 Harring. [Del.], 360; *Eaton* v. *Mellus*, 7 Gray, 566, holding that, in the absence of fraud in the assignor, the assignee can only recover of him the amount of the consideration paid for the assignment, with interest.)

If the foregoing views are correct, it follows that the plaintiff, holding simply the indorsement of the Moore note 4. —— "without recourse," could not sue the Chesires on Effect of indorse-ment. out a case upon the facts, would be a special one against Griffith, of whom he purchased the note, and to whom he made payment therefor. So Griffith's remedy would be against the Chesires. Under our statute, it may be that Griffith might *specially* assign his cause of action against Chesires to the plaintiff; but the mere indorsement of the note without recourse would not have this effect. Such an indorsement operates simply to transfer the title to the note — not an independent cause of action. The demurrer as to the first count of the petition was, beyond doubt, properly sustained as to the Chesires.

And if we are right in considering it as being intended as one upon the indorsement, and not as one intended and

adapted to recover the consideration paid for the note, it was also properly sustained as to Griffith.

II. The second count in the petition charged the defendants, jointly, with falsely and fraudulently representing to 5. ——Fraudulent suppression of facts. the plaintiff, with a view to induce him to purchase the said note and take an assignment without recourse, that it was all right and wholly unpaid, &c.; whereas the contrary was true, &c., &c.

This clearly set out a cause of action—a case of fraud. Issue was taken on this count, and the cause was tried thereon by a jury, who found for the defendants.

The plaintiff complains of the charge of the court, but, as we think, without foundation. The court charged, in substance, that, if the fraud alleged was proved, the plaintiff should recover against all the defendants, or those who committed the fraud. The charge defined the elements or ingredients necessary to constitute fraud. No complaint on this head is made. The court charged that if the defendants, or either of them, fraudulently suppressed or withheld facts material to be known, this would be, in law, a fraud, and actionable, if any injury to the plaintiff resulted therefrom.

From a careful examination of the charge and instructions of the court, in connection with the testimony, we think the cause was most fairly and intelligently put to the jury.

If the directions to the jury are exceptionable at all, we think the defendants, rather than the plaintiff, have the better right to complain. We see no reason to interfere, on the ground that the verdict was against the weight of evidence.

III. On the trial, the defendant, Wesley Chesire, was called as a witness for the defendants. He testified that the 6. Evidence: intention. plaintiff, near the time he obtained the note of Griffith, told him (the witness) that he was about to trade for it. "I told Watson," says the witness, "that

he had better not trade for it; that Griffith had been out to Moore's, and Moore said he would not pay the note; that we had misrepresented a piece of timber land to him. There was something said about the defense Moore had (or claimed to) set up. I told him that we did not misrepresent it." The witness was then asked this question: "State what you know about the truth of the representations you made to Watson in regard to Moore having a defense to the note, and what you then believed in relation to it?" Objected to by plaintiff; objection overruled. Witness answered: "I did not think he had any just defense." To a similar question he also answered: "I did not believe that Moore had a defense to the note."

The error assigned is, that it is not permissible to allow a witness to testify as to his belief, especially in reference to a question upon which, in a case of fraud, the whole cause usually turns.

We admit that it is going a great way to allow this to be done, especially where the witness is a party to the suit, testifying at his own instance and in his own behalf. Yet the authorities do hold, that when the knowledge, belief or intention of the witness is a material fact, it may be testified to the jury, the same as any other fact; giving to the opposite party a liberal scope in the cross-examination. *Thatcher et ux.* v. *Phinney*, 7 Allen (Mass.), 146, 149; *Lombard* v. *Oliver*, Id., 155; *Fisk* v. *Chester*, 8 Gray, 506. So in *Seymour* v. *Wilson*, 14 N. Y. (4 Kern.), 567, it was held, that, on an issue of fact as to whether a transfer of property was fraudulent, and in a case where the facts did not necessarily prove fraud, but only tended to that conclusion, it was competent, where the transferrer is a witness, to inquire of him whether, in making the transfer, he *intended* to delay or defraud his creditors. "Such evidence," says the court, "should be received for what it may be considered worth."

In such case the court should, if asked, and, perhaps, on its own motion, state to the jury, in substance, that, in judging of a man's belief, knowledge or intention, they should consider *all* the evidence and all of the circumstances; that *his* statement in that respect was not conclusive upon them; but they should arrive at their *own conclusion* upon the whole case, including, of course, the statement of the witness, and giving it such weight as, under all of the circumstances, they believe it fairly entitled to.

*7. —— instruction.*

It follows that the court did not err in permitting the questions to be answered.

Affirmed.

COLE, J., having been consulted in the cause in the District Court, took no part in its determination by this court.