# MANN v. TAYLOR.

1. **Pleading**: ERRORS WAIVED BY ANSWERING. Errors, if any, in overruling defendant's motions to strike the petition from the files, to strike out parts thereof, and to make the same more specific, were waived by answering and going to trial. (See *Coakley v. McCarty*, 34 Iowa, 105.)

2. **Contract**: BREACH : EVIDENCE : PAROL TO VARY WRITING. In an action for the breach of a written contract whereby defendant was to furnish to plaintiff certain griddles which were salable only at a certain season of the year, and which contemplated that plaintiff would go to a distant state to sell the same at the proper season,— where such facts were pleaded, and the further fact that plaintiff, at the expense of time and money, went to the designated place to

sell the griddles, but that defendant failed to furnish them, *held* that plaintiff was properly allowed to state what was said between him and defendant in regard to the purpose for which the griddles were purchased. Such evidence did not vary the terms of the contract, but tended to show what might reasonably have been contemplated by the parties at the time of making the contract as a result of a breach thereof.

3. —— : FRAUD INDUCING : EVIDENCE. Where plaintiff alleged fraud on the part of defendant in inducing him to enter into a contract for the purchase of certain articles which he falsely claimed to have on hand, plaintiff was properly allowed to testify that he would not have entered into the contract had he known that defendant did not have the goods on hand. It being material whether the contract was induced by the false representations, plaintiff was entitled to testify directly as to that, since the fact was peculiarly within his knowledge.

4. Sale : FAILURE TO DELIVER : DUTY TO AVOID DAMAGE. While in some cases a party is bound by care and a reasonable expenditure to avoid damage from another's wrong, a purchaser of goods which have been paid for is not bound to make a new purchase to relieve the vendor from liability for a breach of his contract to deliver.

5. —— : —— : REMOTE DAMAGES. Where articles are sold with the understanding that time and expense are to be incurred by the purchaser in preparing for the sale of them, and such time and expense are lost by reason of a failure to deliver, the damage is a direct result of the failure, and not remote.

6. Fraud : PLEADING : DEFECT WAIVED. Where a petition charging fraud by false statements failed to allege that the defendant knew the statements to be false when he made them, *held* that the defect was waived by a failure to attack it in the proper manner, and the court was not required to instruct the jury that the plaintiff could not recover without proving the omitted allegation.

7. Attachment : NON-RESIDENCE : WHAT IS : INSTRUCTION : EVIDENCE TO WARRANT. On the question whether the defendant was a non-resident of the state within the meaning of the attachment law, authorizing attachments to issue against non-residents, the court instructed that a resident " is one who has a fixed abode within the state, and not one whose residence is only temporary, or who is sojourning in the state for a temporary purpose only, with the intention of removing from the state when such temporary purpose is performed; " and that a non-resident is " one who has no such fixed abode within the state." The court, regarding the instruction as erroneous because not warranted by the evidence, does not pass upon its validity as a statement of the law, but BECK, J., in a concurring opinion, holds that it is unsound, in that it incorrectly defines " resident " and " non-resident," and makes " residence " almost synonymous with " domicile."

*Appeal from Clay District Court.*—Hon. Lot Thomas, Judge.

Filed, October 8, 1889.

Action for breach of contract in the sale of certain griddles. There was a judgment for plaintiff, and defendant appeals.

*Hughes & Chamberlain* and *H. S. Wilcox*, for appellant.

*Parker & Richardson*, for appellee.

Granger, J.—I. The first five divisions of appellant's argument are devoted to assignments of error by the court in overruling motions to strike the petition from the files, to strike out parts thereof, and to make the same more specific. As to these motions, it is sufficient to say that after the rulings thereon the defendant answered, and went to trial, which operated as a waiver of any error in the rulings. *Coakley v. McCarty*, 34 Iowa, 105.

1. Pleading: errors waived by answering.

II. The petition contains four counts; three of which state a cause of action based on the following :

"Spencer, Iowa, January 6, 1888.

"This agreement, made this sixth day of January, 1888, between A. D. Taylor, of Spencer, Clay county, Iowa, and G. S. Mann, of the same town, county and state, witnesseth : That the said A. D. Taylor hereby covenants and agrees, and by these presents does grant the right to G. S. Mann to sell the Taylor Home Griddle, of which he is the owner of letters patent for the state of Michigan, in the county of Lenawee, state of Michigan, on a certain royalty to be paid to the said A. D. Taylor. The said A. D. Taylor agrees to furnish the said G. S. Mann six hundred griddles,—five hundred number 3 at fifty cents, and one hundred number 4 at sixty cents,—free on board the cars at Youngstown, Ohio. The royalty on the above-named griddles,

one hundred and fifty-eight dollars—is paid in advance, the receipt whereof is hereby acknowledged; and in case the said G. S. Mann buys the exclusive right to said territory, at a cost of two hundred and fifty dollars, between this date and the first day of April, 1888, then this royalty of one hundred and fifty-eight dollars to be applied on the payment of said territory, and the said A. D. Taylor agrees to give unto the said G. S. Mann a patent-right deed of said Lenawee county. It is further agreed that the said G. S. Mann agrees to pay the said Youngstown Stove Company, of Youngstown, Ohio, the balance due on six hundred griddles on delivery.

"G. S. MANN,

"A. D. Taylor."

The allegations of the petition show that at the time of making the contract it was the intention of plaintiff to go Lenawee county, Michigan, to sell the same, and that they were only salable for a short time in the winter season; that the parties both knew these facts, and contracted with reference to them; that plaintiff went from Clay county, Iowa, to Michigan, relying on the contract of defendant to furnish the griddles; and he seeks to recover special damages for his loss of time and expenses. And for that purpose the plaintiff's counsel asked him as a witness: "What, if anything, was said between you and Mr. Taylor in regard to the purpose for which these griddles were purchased?" Against the objection that it was immaterial, and tended to vary the terms of the contract by parol, the plaintiff was allowed to answer, and, we think, correctly. It in no manner changed or varied the terms of the contract. Its purpose was to place the court in a position to know what might reasonably have been contemplated by the parties at the time of making the contract as a result of a breach thereof. If it was then understood that as a result of the contract plaintiff would go to Michigan to secure the benefits of it to himself, defendant might well understand that a breach on his part would result in a loss of time and expenses

2. CONTRACT: breach: evidence: parol to vary writing.

to plaintiff, for which he should be liable. Such damages are not remote, but a direct result of the breach. There were other questions directed to the same purpose, such as: "What was said about the griddles? "Was there conversation about the time of year in which these griddles could be sold? At what expense were you in selling these griddles?" These questions have all been examined, and we need not notice them separately. We cannot say that all of them are strictly material, but with few exceptions they are; and in no case do we find anything like error to the prejudice of the appellant.

III. Perhaps we should notice some of them wherein the objection is urged on different grounds in argument. One count of the petition charges the trans-action in making the contract as fraudulent on the part of the defendant, and that the plaintiff was deceived by his representations that he had on hand the griddles for delivery; and on the trial the plaintiff was asked if he would have entered into the contract if he had known that the defendant did not have the griddles on hand to furnish. The defend-ant concedes that on the question of fraud it was proper to establish such fact, but urges that plaintiff could not properly testify to that fact directly; that it must be established by proof of other facts and the surrounding circumstances. While it is true, as a general rule, that ultimate facts or conclusions are not to be thus estab-lished, the rule has its exceptions, and the exceptions are based on the exceeding difficulty of making the proof in that manner. There is no more striking illustration of the rule than in cases where it is necessary to prove motives, or the reasons which prompt one to act, when these motives or reasons are to be established in his own behalf. The motives or reasons may exist, but without the possibility of proof, except by such direct testimony. The point under discussion may be a forcible instance. It is a question of what induced the plaintiff to make the contract. Who can know? Or what particular facts would show it? Or, perhaps, better, who could

3. ——: fraud inducing: evidence.

know, or what particular facts would show, how some particular statement or fact in the transaction affected his conduct? Where such facts become material, it is proper for the party to state them directly. The case of *Watson v. Chesire*, 18 Iowa, 202, in principle, supports this rule.

IV. One count of the petition sets out a cause of action based on an oral contract to deliver to plaintiff

4. SALE: failure to deliver: duty to avoid damage.

handles to be used with griddles, and without which the griddles were not salable, and that there was a breach of the contract to deliver them; and the defendant, on the trial, offered to prove that they could be manufactured for two cents each at any tin-shop, which offer was refused. Plaintiff had bought and paid for these handles, and, while in some cases a party is bound by care and a reasonable expenditure to avoid damage, we are referred to no case in which it is held that, where articles are thus bought, the vendee is bound to make a new purchase to relieve the vendor from a liability for a breach of his contract to deliver.

V. Appellant complains of the fourth instruction by the court, wherein it said to the jury that if the handles of the griddles were not forwarded as agreed, and the plaintiff was by reason of such failure delayed in the sale of the griddles and handles, and put to additional expense and loss of time by reason thereof, then the plaintiff would be entitled to recover as an element of damage the amount of his actual and necessary expenses incurred, and the reasonable value of his time actually and necessarily lost by reason of the failure to receive the handles as agreed. Error is urged (1) upon the ground that the damage could have been prevented by ordinary effort and expense. This point we have considered on the objection to the testimony. (2) That a part of the griddles were in fact received and sold, and that defendant should in no event be liable for the whole amount of plaintiff's actual and necessary expenses incurred. The instruction is not open to the criticism made. Fairly construed, it means

that the defendant would be liable for such expenses as were incurred by reason of the failure to deliver the handles. The language is that he would be liable for "the amount of his actual and necessary expense incurred, and value of his time actually and necessarily lost by reason of the failure to receive the handles as agreed." It could not have been understood to mean expenses other than those incurred by reason of the failure, and that would not include expenses incurred in the sale of the eighty-six griddles received, or any expenses on account of articles received. (3) That such damages are too remote. Our review of objections to the testimony deals with this question. If these handles were sold with the understanding that time and expenses would be necessary to prepare for the sale of them, and such time and expenses were lost by reason of a failure to furnish them in accordance with the contract, the damage is a direct result of the failure, and not remote.

5. —: —: remote damages.

VI. The court instructed the jury upon the question of fraud, and complaint is made that the instructions nowhere inform the jury that the proofs must show that the defendant, when he made the statements constituting the fraud, knew them to be false. The count of the petition alleging the fraud is before us, unquestioned as to its sufficiency, and it contains no such allegations. The proofs need only to conform to the allegations. If the petition in this respect is defective, the defect is waived by a failure to attack it in the proper manner.

6. FRAUD: pleading: defect waived.

VII. Upon the measure of damages the instructions of the court allowed the jury to assess as damages the royalty on the eighty-six griddles sold by the plaintiff, and this plaintiff concedes to be error, and consents to modification of the judgment by reducing it thirty dollars, which certainly makes the error without prejudice.

VIII. An attachment issued in this case at the instance of the plaintiff, and appellant brings a cross-

Mann v. Taylor.

7. ATTACHMENT: non-residence: what is: instruction: evidence to warrant. action on the attachment bond. An alleged ground for an attachment was "that the defendant was a non-resident of the state." As to who is a resident of the state, the court gave the jury the following instruction: "You will observe that the first ground charged for the issue of the attachment is that the defendant was at the time a non-resident of the state. A resident of the state, as the term is here used, means one whose legal residence is within the state; that is, one who has a fixed abode within the state, and not one whose residence is only temporary, or who is sojourning in the state for a temporary purpose only, with the intention of removing from the state when such temporary purpose is performed. And, consequently, a non-resident of the state means one who has no such fixed abode within the state." The jury specially found that the attachment rightfully issued, and appellant complains of the instruction on several grounds, and, among them, that it was misleading under the evidence in the case, and this complaint, we think is well founded. There is no proof, whatever, of defendant's having a residence elsewhere than in Iowa. His testimony is that Iowa has been his residence for twelve years. He seems to have been changing his residence from place to place in the state, but for nine years he has not been without the state. We do not see how, under the proofs, he could have been found to be a non-resident. He expressly states that his residence is Spencer, Iowa, and there is nothing to contradict it. There is testimony to the effect that he intended to settle or close out his business, and leave the state, but no claim that he has done so. A mere intention to remove from the state would not make him a non-resident. A removal with that intent would. *Cohen v. Daniels*, 25 Iowa, 88. We are not told in argument on what theory a change of residence under the evidence could be found. There was testimony as to the defendant's change of residence within the state from time to time, and of his purpose in the future, but none whatever of an actual change. The fact of a former

Mann v. Taylor.

residence within the state is not, and could not well be, questioned; and with that as a fact in the case there must be evidence of a change before the fact of non-residence can be found. We think there was no testimony to justify an instruction upon the question of the defendant's being an actual non-resident, and that because of the instruction the judgment must be reversed. With this disposition of the case it is not important that we should determine the validity of the instruction with proper evidence for its support.

REVERSED

BECK, J. (concurring).—In my judgment, the instruction to the jury quoted in the eighth point of the foregoing opinion presents erroneous rules of law, and on that ground alone the judgment should be reversed. One of the grounds authorizing the issuing of an attachment is an allegation in the petition that defendant is "a non-resident of the state." Code, sec. 2951, subd. 2. The instruction referred to erroneously defines the words "resident" and "non-resident," and presents erroneous rules for determining who is a "resident" and who is a "non-resident." A resident of the state is one who resides in the state. "To reside" is to have a settled abode permanently or for a time. A resident of the state is one who resides permanently or for a time in the state. There is not necessarily the idea of permanence connected with the signification of the words "reside" and "residence." A resident may have a settled abode for a time, to be determined by circumstances. His residence may be temporary, for temporary purposes. He may retain his citizenship and his domicile in another state, and will be subject to the law of this state intended to protect the rights of residents, and to provide remedies against them. The definition of the term "residence," found in the instruction, is very nearly a definition of the term "domicile." The difficult task of defining the word "domicile," as it should be understood in the law, I need not attempt. Certain I am the instruction utterly fails to define correctly the words

"resident" and "non-resident." Under it, one who has a temporary residence in the state for the prosecution of business therein, which may continue for an undetermined time, is subject to the attachment of his property on the ground that he is a non-resident of the state. I am clear upon the point that the instruction is erroneous, and prejudicial to the defendant in so holding. Upon the subject involved in the question as to what constitutes residence, and who is to be regarded as a resident of the state in cases of the character of the one before us, see, in support of the views I have just expressed, the following decisions of this court, and the authorities therein cited: *Cohen v. Daniels*, 25 Iowa, 88; *Fitzgerald v. Arel*, 63 Iowa 104; *Love v. Cherry*, 24 Iowa, 204. Upon the grounds I have suggested, and no others, I think the judgment of the district court ought to be reversed. While I concur in the conclusion announced in the opinion of the majority of the court, I do not concur in the reasoning and grounds upon which the conclusion is based. I think it safer to determine law actions in this court upon questions of law, rather than upon questions of fact, even though it may appear to us that the evidence is all one way.