MEYLERT, *v.* GAS CONSUMERS' BENEFIT CO.

*(Circuit Court, New York County.   December, 1890.)*

1. DAMAGES—BREACH OF CONTRACT—LOSS OF EARNINGS.
    A sole agent for the sale of a patented article within a specified territory, who has abandoned his profession as a physician, and devoted his entire time to the business of the agency, in reliance on his contract with the manufacturers, is entitled to recover from them for their total breach of the contract to furnish him with the articles, not only the amounts which he actually expended in the business of the agency, but also the earnings which the evidence reasonably establishes he otherwise would have made from his profession.

2. CONTRACTS—ABROGATION BY SUBSEQUENT AGREEMENT.
    A supplementary contract entered into between the parties in which they declare that "it is to supersede, replace, and interpret any and all provisions contained in the original agreement aforesaid  *.*  * so far as relates to matters referred to herein," and which supplementary contract alters the original agreement only in respect to the delivery of the articles and the quantity to be delivered, does not abrogate the original agreement, and does not prevent the agent from recovering damages for its breach by the manufacturers.

Action by Meylert against the Gas Consumers' Benefit Company for breach of contract.   The case was tried before the court without a jury.

*Phillips & Avery*, for plaintiff.   *H. Aplington*, for defendant.

LAWRENCE, J.   The agreements between the parties to this action, executed in August, 1886, and March, 1887, were superseded by the contract of December 6, 1887, and they will therefore be left out of view in disposing of this case.   The evidence, I think, establishes that prior to the execution of the contract of December 6, 1887, the manufacture of the "Diaphragm Burner" had been abandoned, and that, as is contended for by the plaintiff's counsel, both parties thereafter treated in reference to the new burner, samples of which were in the possession of plaintiff.   The evidence, I think, also establishes that the defendants failed to comply with their contract of December 6, 1887, which, it appears, was executed upon the promise of the plaintiff "to faithfully and energetically conduct the business of introducing and selling the ' Jackson Automatic Pressure Regulating Gas-Burners' manufactured by the defendants," and by which the exclusive right to dispose of said gas-burners "within and for the following named territory, and for no other place or places, to-wit, the Pacific slope, the same being defined as including all that portion of the United States which discharges its waters into and towards the Pacific ocean, also the entire territory of New Mexico," was granted to the plaintiff.   This contract contained various provisions in relation to the sales to be made by the plaintiff, and in relation to the number of gross of burners to be purchased by the plaintiff annually, and by it the plaintiff was precluded from any right to manufacture, or cause to be manufactured, any of said burners, and he was required to purchase all that he might require from the defendants, paying therefor cash on delivery, or at such time as the said party of the first part might demand. It was also, among other things, provided that if the party of the second part

failed to comply with or violated any of the provisions of the agreement the defendants should have right "to forfeit this license, and to resume and enjoy all rights under it, as fully as if this license had never been granted." It is clear from the evidence that the plaintiff, in the performance of his contract, proceeded to San Francisco, and opened an office, wherein he exhibited samples of the burners in question, and that he energetically attempted to introduce and sell said burners upon the Pacific slope. · It is equally clear from the evidence that defendants constantly delayed the plaintiff in the prosecution of his business by omitting to forward the burners required by him, and finally, that in June, 1888, the plaintiff drew up and procured to be executed the agreement which bears date June 30, 1888, which recites that its provisions shall supersede and replace and interpret any and all provisions contained in the original agreement (to-wit, that of December 6, 1887) so far as they relate to any of said provisions. The agreement then goes on to provide that the defendant company agrees to deliver 150 gross of said "Jackson Automatic Pressure Regulating Gas-Burners, in one or more shipments, before August 15, 1888, and to deliver as many more of said burners within each and every month thereafter as the said party of the second part shall order and purchase, provided that said party of the first part shall not be required to deliver more than 300 gross of said burners within any one month." It also provided that "the said party of the second part shall be at liberty peaceably and without prejudice to terminate his agreement aforesaid at any time hereafter at his option, provided that he shall then surrender the license aforesaid to the said party of the first part, said surrender to take full effect and force within thirty days thereafter." It is clear also from the evidence that the defendants under the new agreement did not ship any burners on August 15th, as by its terms required, but that on or about August 23d 50 gross were sent to the plaintiff, which were unmarketable, and not in conformity to sample. It appears that those burners were returned, and that no other burners were sent to the plaintiff. It is also clear upon all the evidence in the case that the defendants failed in every respect to perform their contracts with the plaintiff, and that the plaintiff was justified in finally returning to the practice of his profession, which was that of a physician. The evidence also establishes that the plaintiff was ready and willing at all times to perform both the original and supplementary contracts on his part; and it seems to me, therefore, that the only question which arises in this case is as to the amount of damages to be awarded to the plaintiff.

Testimony was given by the plaintiff on the trial, showing the amounts that he had necessarily expended in and about the attempt to introduce the burner referred to in the contract upon the Pacific slope. The items given run from December, 1887, to June 30, 1888, the date of the supplementary contract, and they amount to $768.95. A further bill of damage alleged to · have been sustained by the plaintiff runs from June 30, 1888, to December, 1888, the date of the final abandonment of the enterprise, and these items amount to $383.70. Having gone over all those items, I am of the opinion that the plaintiff has established by his evidence that they were expenses necessarily incurred by him in the prosecution of the enterprise upon which he had been induced to enter by his contract with the defendants. Those items in the aggregate amount to $1,152.65. But the plaintiff further claims that he is not only entitled to expenditures absolutely incurred by him, but that he is also entitled to recover the value of his time from December 6, 1887, to November 6, 1888, being a period of 11 months, at $700 per month, and making a total of $7,700, less the sum of $250, which during that period he testifies he earned as a physician. If he is right in this contention, the amount which he is entitled to recover is $8,602.65. On the trial of the action I had great doubts—assuming the contract to have been violated on the part of the defendants—as to the measure of damage to which the plaintiff was entitled,

and it seemed to me that some of the items which the plaintiff claims could not be awarded to him. An examination of the authorities, however, convinces me that the plaintiff is entitled to recover all such damages as are the certain result of the breach, even though such damage be uncertain in amount. See *Wakeman* v. *Manufacturing Co.*, 101 N. Y. 205, 4 N. E. Rep. 264. In that case the court said, at page 209: "But when it is certain that damages have been caused by a breach of contract, and the only uncertainty is as to their amount, there can rarely be good reason for refusing, on account of such uncertainty, any damages whatever for the breach. A person violating his contract should not be permitted entirely to escape liability because the amount of the damages which he has caused is uncertain. It is not true that loss of profits cannot be allowed as damages for a breach of contract. Losses sustained and gains prevented are proper elements of damage. Most contracts are entered into with the view to future profits, and such profits are in the contemplation of the parties; and, so far as they can be properly proved, they may form the measure of damage. As they are prospective, they must, to some extent, be uncertain and problematical; and yet, on that account, a person complaining of breach of contract is not to be deprived of all remedy. It is usually his right to prove the nature of his contract, the circumstances surrounding and following its breach, and the consequences naturally and plainly traceable to it, and then it is for the jury, under proper instructions as to the rules of damages, to determine the compensation to be awarded for the breach. When a contract is repudiated, the compensation of the party complaining of its repudiation should be the value of the contract. He has been deprived of his contract, and he should have, in lieu thereof, its value, to be ascertained by the application of rules of law which have been laid down for the guidance of the courts and jurors." In *Bean* v. *Carleton*, 4 N. Y. Supp. 61, the general term of this department held, in an action brought to recover damages for the alleged breach of a contract made by a publisher in not publishing a book of which the plaintiff was the author, that the difficulties involved in estimating the injury done to an unknown author, by the breach of a contract to publish his first book, do not preclude a recovery by him, or require the jury in such a case to render a verdict for merely nominal damages. In *Taylor* v. *Bradley*, 39 N. Y. 129, which was an action for the breach by the defendant of an agreement to let a farm to the plaintiff for three years, each party to furnish part of the stock, seeds, tools, etc., the plaintiff to occupy and work the farm, and have certain specified supplies for his family, and all proceeds to be divided equally, it was held that the plaintiff was entitled to recover, as damages, the value of his contract, *i. e.*, what such a privilege of occupying and working the farm, subject to the conditions of the agreement, and under all the contingencies which are liable to effect the result, is worth; and such damages may be recovered upon the refusal of the defendant to perform the contract. In *Savery* v. *Ingersoll*, 46 Hun, 176, the action was brought to recover damages for the breach of a contract alleged to have been made by the defendant with the plaintiff. The defendant was then engaged in delivering lectures on public themes for a compensation. The plaintiff gave evidence tending to prove that the defendant agreed to visit the city of Auburn, where the plaintiff resided, and deliver one of his lectures for the sum of $250, the plaintiff to have the sale of and the money received for the admission tickets. The defendant did not attend in pursuance of the terms of the alleged agreement, and the jury rendered a verdict in the plaintiff's favor for the sum of $102 damages and costs. The judgment entered thereon was affirmed upon appeal, and the court, after quoting several of the cases heretofore referred to, concludes its opinion by saying: "The evidence was such that the amount of profits lost by the plaintiff was doubtful and uncertain, but the same tended to prove that if the defendant had performed the agreement on his part, the plaintiff would have

realized from the sale of admission tickets a sum equal to the amount of the verdict, over and above the sum which he agreed to pay to the defendant, and the expenses of preparing for superintending the delivery of the lecture. The damages assessed by the jury, as we must hold in view of the instruction which they received from the court, were, in their opinion, the certain and direct results of the breach of the contract, and to such damages the plaintiff is entitled as matter of law." Sitting as a juror, I find upon the evidence in this case that the plaintiff incurred the expenditures to which he has testified, in consequence of his contract with the defendants, and in good faith relying upon their fulfilling the conditions of the contract on their part. I also find that, in consequence of the agreement between the plaintiff and the defendants, the former was induced to abandon his profession, from which he averaged an income of about $700 a month, and that, in consequence of the failure of the defendants to perform their agreement, the plaintiff not only lost the amounts which he actually expended, but the earnings which the evidence reasonably establishes he otherwise would have made from his profession. I therefore find that the loss of those earnings is a legitimate subject of damage in this case, and that the plaintiff is entitled to recover therefor the sum of $7,700, deducting therefrom the sum of $250, which the evidence shows he earned from his profession during the time of the running of said agreements. I also find that the whole of the plaintiff's time was necessarily devoted to his effort to introduce the burner in question upon the Pacific slope.

It is urged that the contract of June 30, 1888,—that is, the supplementary contract,—which limited the time within which the delivery of the burners should commence, the defendants then being in default, entirely superseded the contract of December 6, 1887. Although the word "supersede" is used in that contract, it will be observed upon reading it that the parties declare that "it is to supersede, replace, and interpret any and all provisions contained in the original agreement aforesaid, so far as they relate to any of said provisions; and this agreement is to be and remain in full force and effect, as if this had been the original agreement, so far as relates to matters referred to herein." It will also be seen on reference to that agreement that it only alters the original contract in respect to the time of the deliveries of the burners, and of the quantities to be delivered, giving also to the plaintiff the liberty at any time to terminate his agreement as aforesaid at his option. This provision clearly shows that the original agreement was still in force, and that the agreement of December 6th was not intended to be abrogated or nullified. Inasmuch as the evidence shows that neither contract was performed in any respect by the defendants, I think it is too late for the latter to claim that the plaintiff cannot recover for the loss and injury which he has sustained by reason of their misconduct. In addition to the cases already cited upon the subject of damages, the cases of *Mann* v. *Taylor,* 78 Iowa, 355, 43 N. W. Rep. 220; *Farwell* v. *Davis,* 66 Barb. 73; and *Taylor Manuf'g Co.* v. *Hatcher Manuf'g Co.,* 39 Fed. Rep. 440, — may be profitably consulted. Judgment will therefore be rendered for the plaintiff for $8,602.62, with costs of the action.