ALICE E. JACKSON, Appellee, v. DELLA MILLER, Appellant.

No. 45338.

DECEMBER 10, 1940.

REHEARING DENIED APRIL 11, 1941.

D. W. Harris, for appellant.

J. R. Barkley and Verne J. Schlegel, for appellee.

RICHARDS, C. J.—The following conceded facts stand out as the immediate background of this controversy. At about 3:30 p. m., April 29, 1938, appellee and her sister parked their automobile in front of the farm residence of one E. G. Dickson. Appellee alighted and carrying a sample case proceeded to the front door. The paved highway on which the car was parked extended east and west. This door of the residence was about 72 feet south of the paving. There was a garage that was located about 150 feet west from, and about 12 or 14 feet further south than, the residence. In the garage door was standing Dickson. He observed appellee approaching the house, and was plainly visible to appellee. Because of the location of the garage, appellee ceased to be in Dickson's range of vision after she had proceeded to a point that was a few feet north of the front door. After a time appellee, carrying her sample case, and again becoming visible to Dickson, returned to and entered the car. Temporarily the car remained stationary during a downpour of rain. It then was driven away. During this afternoon the house door was open and the screen door unfastened. Appellant was the housekeeper of the Dickson home, but she was outside of and south of the house while appellee was on the premises, and did not see appellee until the latter had returned to the car. On this

afternoon appellee was pursuing her then occupation, the selling of cosmetics.

The foregoing were the principal facts and circumstances that allegedly led appellant to believe that appellee had taken from the house certain cosmetic preparations belonging to appellant that appellant claims disappeared from the house sometime between about 2 p. m. on April 29, 1938, when she claims to have used them, and 4 or 5 o'clock of the same afternoon, when she claims she discovered they were gone.

In her first assignment of error appellant's complaint is of the sustaining of appellee's objections to evidence appellant attempted to introduce during cross-examination of the justice in whose court the information was filed. In chief, he had testified that the information could not be produced, and had been examined in some detail concerning its contents. Among other things he stated that he had put into the information what appellant had stated to him the circumstances were. He also testified in chief that the signing was in the afternoon, and that during the forenoon of that day Mrs. Miller had come to him and had stated her case. Upon cross-examination the witness stated that after Mrs. Miller came into his office in the forenoon he went to the county attorney's office and consulted with him; that he excused himself from appellant and went to the county attorney's office and consulted him. He also stated that in this consultation he discussed the matter with the county attorney and that the information was not drawn or filed until after this conference in regard to it. At that point counsel for appellant propounded to the witness these questions:

"Q. And was matters discussed there as to what the facts were and about the filing of the information? * * *

"Q. State whether or not there was a discussion of the facts of the case at that time. * * *

"Q. Did I [appellant's counsel on the trial of this case who had been the county attorney in question] tell you to go ahead and file the information? * * *

"Q. State whether or not that information was filed with my approval or not."

Each of these questions was "objected to as incompetent,"

irrelevant and immaterial, and hearsay, not proper cross-examination.'' Following the sustaining of this objection to all the questions there was the following colloquy between counsel for appellant and the court:

''Mr. Gilmore: May I ask whether the objection was sustained to the interview between the Justice and the County Attorney because it is not cross-examination, or—

''The Court: The Justice is not a party here.

''Mr. Fimmen: One of the facts to prove or disprove malice is whether or not the matter has ever been discussed—or whether or not the attorney has given his opinion on the matter, and for that reason we feel that it is a competent question.

''Mr. Gilmore: The defendant here, the complaining witness, told the Justice what the facts were and the Justice narrated those facts to the County Attorney, and the County Attorney approved them. We can show good faith.

''The Court: The ruling of the Court is based on the fact that there was no conference between the defendant and the County Attorney or any other attorney.

''Mr. Gilmore: The defendant here told the Justice what the facts were and then the Justice went to see the County Attorney. That would accomplish the same purpose as if Mrs. Miller had a talk with him.

''The Court: The Court will adhere to its former ruling.''

It seems quite evident that the court deemed these questions and the colloquy as a profert of testimony to show that appellant had told the justice the facts on which she sought prosecution of appellee, that appellant's narration of such facts was then stated by the justice to the county attorney, and that the county attorney approved these facts as warranting filing of an information against appellee. That is the reasonable conclusion from the court's statement that the ruling sustaining the objection was based on there having been no conference between appellant and the county attorney or any other attorney.

Proof of following in good faith the advice of the county attorney was proper to directly rebut or disprove malice and want of probable cause, essential elements of the cause of action appellee had pleaded, and would be permissible under a general

denial. McAllister v. Johnson, 108 Iowa 42, 78 N. W. 790. But though the statements to the court, made by counsel as above set out, be viewed as a profert of testimony and be given full weight in respect to everything counsel said to the court, there remains for consideration the fact that no claim was made by counsel that there would be proof of knowledge on appellant's part of the county attorney's opinion as expressed by him to the justice, based on the statements appellant had made to the justice. Nor have we discovered in the record any showing that would warrant a jury in finding that appellant possessed such knowledge. Of course appellant could not have followed in good faith advice that never came to her. For that reason the testimony that was proffered would have availed appellant nothing in the way of confirming her contention that she rightly believed there was probable cause, and that there was good faith and lack of malice on her part. We discover no error in the ruling.

In the second assignment of error appellant points out that she introduced evidence to show that the dismissal of the criminal proceedings against appellee did not amount to an acquittal upon the merits of the case. The evidence went to the question whether the dismissal was brought about by the procurement of appellee, the party prosecuted. In that connection the deputy sheriff, Jones, testified "Mrs. Jackson [appellee] asked me to go out and see Mrs. Miller to see if I couldn't get this matter settled that night" (the night of appellee's arrest); also that "at the request of Mrs. Jackson I did go out to see Mrs. Miller." He stated that he went out there (to Mrs. Miller's) solely at the request of Mrs. Jackson, to which the county attorney concurred at the time that it was all right to do. The witness testified that he understood that, in speaking of getting the matter settled, Mrs. Jackson meant "to get the charges withdrawn or dropped"; that that was the way the witness understood Mrs. Jackson; that Mrs. Jackson said nothing as to how it would be settled. Jones further testified that he "went out to see Mrs. Miller merely to get the case settled and if she had wanted to dispose of the case or drop it she would have had to come before the Justice of the Peace"; that when he saw Mrs. Miller "She didn't talk much like she would be willing to settle until it come to court." Appellant testified that, after the information was

filed, Jones came out to the house to see her; that he said that Mrs. Jackson had been arrested and that she wanted to settle, and that he (Jones) "wanted to know if I would settle." Appellant testified that at the time she hadn't made up her mind yet what to do; that Jones was at the house 15 or 20 minutes that day, and she did not tell him what she would do about the case. She also testified that "After Mr. Jones talked to me about the settlement I got to thinking about it." Appellant was then asked this question:

"Q. After Mr. Jones left you you may state whether or not you considered the matters that he had talked about with you."

The question was "Objected to, as incompetent" and the objection was sustained. That the ruling was erroneous is the purport of appellant's second assignment of error.

It may be the question would have adduced competent testimony. Mann v. Taylor, 78 Iowa 355, 43 N. W. 220. However that may be, it does not fairly appear that from the ruling prejudice resulted, in view of the following considerations: Had an answer been permitted to the effect that appellant considered the matters Jones talked about, the answer would have amounted to saying that appellant considered the fact that appellee had sent Jones to request a settlement (dismissal) of the case, that being substantially all that is shown of Jones' talk. But appellant had already imparted to the jury information of very like import, when she testified that she got to thinking about it *after Jones talked to her about the settlement*. Later appellant was permitted to relate what she stated to the justice, as her reasons, when she appeared at his office and consented to the case being dismissed. In view of the whole situation that obtained we are of the opinion that the error, if there was one, does not warrant a reversal.

 Appellant's third and fourth assignments of error challenge two instructions given the jury. We are unable to consider either of these assignments for the reason appellant failed to take any exceptions to instructions in the district court. In the fifth and sixth assignments complaint is made of the overruling of defendant's motion for a directed verdict. The grounds of the motion were that plaintiff had not sustained her cause of

action by any sufficient evidence, and that the uncontradicted evidence shows that defendant acted in good faith after consulting with the county attorney. The record reveals, however, that appellee's evidence made out at least a *prima facie* case, and that appellant's showing was not sufficient to establish an absolute defense. The case was one for submission to the jury. The question whether the verdict was excessive, though raised in the motion for new trial, is not argued on appeal. The judgment is affirmed.—Affirmed.

SAGER, OLIVER, MITCHELL, and BLISS, JJ., concur.